## Lafferty's Estate. Philadelphia Mortgage & Trust Company's Appeal.

*Guardian and ward—Maintenance.*

A grandmother, guardian of a minor having a separate estate, if in humble circumstances, and in the absence of evidence showing that she took and maintained the minor in loco parentis, will be allowed a periodical sum for the past support of the minor.

Argued Jan. 14, 1892. Appeal, No. 20, Jan. T., 1892, by the Philadelphia Mortgage & Trust Company, administrator of Maggie L. Lafferty, a minor, now deceased, from a decree of O. C. Phila. Co., Jan. T., 1890, No. 180, dismissing exceptions to adjudication. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

On February 11, 1891, the account of Sarah Miller, guardian of Maggie Lafferty, deceased, as filed by the Pennsylvania Company for Insurance on Lives and Granting Annuities, was called for audit.

The facts appear in the adjudication filed by HANNA, P. J., which was as follows:

" The matter came again before the auditing judge upon exceptions filed to his former re-adjudication. After the additional testimony submitted and argument of counsel, he has after careful consideration reached the following conclusion :

" The effort is hereby made by the administrator of a deceased minor to charge the estate of a deceased guardian with moneys of the minor's estate never accounted for by the guardian in her lifetime.

" While on the other hand the personal representatives of the deceased guardian, her executors, disclaim all knowledge of the receipt by their testatrix of the minor's money, and allege that no claim was made therefor until long after they had settled her estate in March, 1882.

" And at the same time the parties interested as heirs at law of the testatrix allege that the moneys received by testatrix were expended by her for the benefit of her ward, that the latter after the death of her guardian received, and enjoyed the income of her estate during her lifetime, and furthermore the

administrator of the deceased minor is concluded from making the claim by the laches, or failure of her guardian appointed after the death of testatrix to present any such claim against the estate of the deceased guardian.

" The facts conceded and proved appeared to be that Margaret Lafferty was the granddaughter of Mrs. Sarah Miller.

" Her father died in 1869 and immediately after his death, his widow, a daughter of Mrs. Miller, took her infant child and went to reside with her father and mother.

" They were people of moderate circumstances. The minor's mother endeavored to support herself and child, but both were evidently mainly supported by Mrs. Miller, who kept a boarding-house to aid in the support of herself and husband.

" She was a sickly, delicate child, and was supported and cared for by her grandmother who not only furnished her needful maintenance, but frequent medical attendance, rendered necessary from her weak and delicate condition.

" At this time the minor had no estate, and was wholly dependent upon the grandmother. But she was entitled as one of the heirs of James Lafferty, deceased, to an interest in his real and personal estate.

" In 1871 Mrs. Miller was appointed guardian of her minor granddaughter. In 1872 the mother of the minor died, leaving surviving her the minor, then about four years of age.

" In the same year Mrs. Miller was awarded the sum of $489.83 as guardian of the minor from the estate of James Lafferty, deceased. The minor during all the time from 1869 resided with her grandmother, and was supported and cared for by her.

" She was a weak and sickly child and needed frequent medical attendance, which was also furnished by her grandmother.

" Some three years afterward in November, 1875, Mrs. Miller received the further sum of $1,451.93, as guardian of the minor, being the latter's share of the real estate of said James Lafferty sold in proceedings in partition.

" The minor continued to reside with her grandmother, who furnished her with her support and maintenance, sent her to school, and as stated, provided her with frequent medical attendance. While at the same time she was still obliged to support herself and husband by keeping a boarding-house.

"In 1875 the minor was about seven years old; she still remained with her grandmother, cared for and supported by her until 1879, when her grandmother died.

"After her death it was found that Mrs. Miller by her will bequeathed all her estate in trust to her husband during his life, with remainder in trust for her granddaughter, the minor, to be paid to her if she attained her majority.

"The husband took against the will, and was paid his share while the remaining share of the estate was awarded to the trustee for the minor.    The minor resided with her grandfather who supported her with the income paid him by the trustee.

"In 1882 he died, and on June 10, 1882, Jos. Walsh was appointed guardian of the minor.    The total income was paid over to him for the support of the minor from that time until December 26, 1889, when the minor died, still in her minority, unmarried and without issue.    This was a period of ten years and two months subsequent to the death of the guardian.

"And during this time the income of the deceased guardian's estate had been paid for the benefit of the minor, the amount thus paid from June 10, 1882, to December 26, 1889, seven years and a half, being $1,930.

"And also during this period the guardian of the minor never required the executor of the deceased guardian to render any account of the minor's estate received by her in her lifetime.

"The question, however, is can the administrator of the deceased minor now render the estate of the deceased guardian liable for the moneys received by her.    And this is to be determined by the further question whether the minor if now living and of lawful age could render her deceased guardian liable.

"A father is bound primarily to support his children, even though they possess a separate estate.    This is well settled both in England and in this country.    Schouler on Donees, 326.    But if unable to do so then he may have an allowance for the purpose out of their separate estate.    But as to a mother she is not charged with the duty of maintaining her children where they have a separate estate.    She is not entitled to claim the earnings of her children and consequently is not bound to use her separate estate for their support, etc. Shearer's Est., 41 Leg. Int. 125.

" She may be allowed for past maintenance. Pennock's Est., 11 Phila. 75. But not where it appears she never intended to make any charge for their support, etc.

" If this be the case, a fortiori, a grandmother, guardian of a minor who has a separate estate, if in humble circumstances and in the absence of evidence showing she took, retained and maintained her minor grandchild in loco parentis, would be allowed not only a periodical allowance for the future support of the minor, but also for the past support. And what the court may grant in the first instance it may subsequently approve and confirm.

" In this case, the infant minor was in the care and under the maintenance of her grandmother for fully three years before the latter received any money belonging to her estate. This sum was $489.83, and without deducting any claims for counsel fees, court costs, commissions, etc., due to the guardian; as it would average one hundred and sixty dollars per annum, it is not unreasonable to presume the court would approve an allowance to the minor of this sum for her support, clothing, medical attendance, etc., especially in view of the fact that the grandparents earned their livelihood from the precarious receipts of a boarding-house, and would very appropriately and justly be entitled to compensation for the support of the minor.

" From this standpoint then the claim of the minor, if living, to surcharge her guardian would be ungracious and properly be disallowed.

" As to the further sum received by the guardian.

" This was in 1875, three years after the receipt of the prior sum, $1,451.93, was paid to the guardian.

" The guardian did not invest this sum, nor did she apply to the court for an allowance for the support of the minor. But she continued to support the minor, provide her with clothing, boarding, schooling and medical attendance, which was frequent and continuous, owing to the ill health of the minor, from the time of the receipt of the money until her death in October, 1879, a period of four years. Again, allowing the guardian the natural expenses connected with the trust, commissions, etc., one hundred dollars, the balance, if invested would yield an income insufficient to maintain the minor at

her increased age, and the principal would be encroached upon, and in a few years all consumed in the support of the minor. Thus at the moderate allowance of five dollars per week, her whole estate would be expended in five years.

" From the circumstances of the guardian it is not unreasonable to presume that the money was expended for the support of the minor, and if such an allowance had been asked for by the guardian it would have been granted by the court.

" Then again the guardian bequeaths to the minor her entire estate after the death of the grandfather. And after his share was paid to him, he, electing to take against his wife's will, the residue was held in trust for the minor until she became of lawful age, the income in the meantime being paid to. her guardian.

" This continued during ten years. Under the circumstances should this court, as a court of equity, after the death of the guardian and the expiration of ten years after her death, surcharge her with the amount she received as guardian of her minor grandchild, who all her life had been supported and maintained by her, and after the death of her guardian received the income of the larger portion of her estate?

" It does not seem just and proper that it should be done, and as the claim is now made not by the minor, but by those interested as her collateral heirs, they are mere volunteers and have no higher equity than the minor herself.

" And in view of the further fact that the minor was represented by a guardian, through more than seven years after the death of the former guardian, and no such claim was made by him against her estate, it may be presumed he was satisfied that no such claim as now made existed against the estate of the deceased guardian.

" After this more careful reconsideration of the claim, the auditing judge has reached the conclusion that no sufficient reason is shown to surcharge the estate of the deceased guardian and the surcharges asked for are refused ; and the account as filed is confirmed nisi."

Exceptions to the adjudication were dismissed without opinion. Exceptants appealed.

*Errors assigned* were the dismissal of the exceptions.

*S. Davis Page*, *John S. Gerhard* with him, for appellants.

*George S. Graham*, for appellees.

PER CURIAM, January 25, 1892.

This decree is affirmed upon the opinion of the learned judge of the orphans' court, and the appeal dismissed at the costs of the appellant.