## Pleasonton's Estate.

*Decedents' estates—Trusts and trustees—Guardians—Practice, O. C.— Finality of adjudications—Collateral proceeding.*

1. A decree of the orphans' court confirming an account is, in all cases, conclusive of the matters contained in it, when attempted to be drawn in controversy in a collateral action.

2. Where, under the will of a testator, a fiduciary institution receives a sum of money upon trust "to invest and keep the same invested and receive the interest and income thereof and apply the same, or so much thereof as shall be needed, for the support, maintenance and education" of testator's niece until her age of twenty-one years or marriage, whichever shall first happen; and from and after her full age aforesaid, or marriage, to apply the net income for her sole and separate use, without the control or interference of any husband whom she may marry, and so that she shall not have power to dispose thereof by anticipation," and after testator's death a guardian is appointed for the

niece upon petition of her father, and several months after the niece arrives at majority the guardian files a final account of his guardianship, in which he debits himself with the entire income derived from the trust fund which the fiduciary company had paid over to him at regular stated periods, the account including nothing besides and claiming credits for sums expended for the support, maintenance and education of the ward, and a cash balance shown in the account as due the ward is duly paid over upon final confirmation, and it appears that in the adjudication proceeding, on this account, the ward was duly represented by counsel and was herself personally present and the account was confirmed without exceptions having been filed thereto, the ward has no standing in court, upon a later adjudication of the account of the fiduciary company as trustee under the will of testator, to object to the fiduciary company taking credit for payment of income from the trust fund to the guardian of the cestui que trust, embracing the same items with which the guardian had debited himself in his final account.

Argued March 27, 1911. Appeal, No. 327, Jan. T., 1910, by John Cadwalader, executor of Elizabeth Hoge Pleasonton LaMothe, substituted appellant, from decree of O. C. Phila. Co., Jan. T., 1896, No. 322, now changed to No. 527, dismissing exceptions to adjudication in Estate of Elizabeth Pleasonton, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*John Cadwalader, Jr.,* for appellant.—Where a guardian duly appointed by will or otherwise has ignored its duties and made payments to another acting as such under color of authority, such payments may be treated as a nullity: Reed v. Mellor, 122 Pa. 635; Hollingsworth's App., 51 Pa. 518; Robinson v. Zollinger, 9 Watts, 169; Vanartsdalen v. Vanartsdalen, 14 Pa. 384.

The question was not res adjudicata: Kinter's App., 62 Pa. 318; McMahon's Est., 14 W. N. C. 311.

The cestui que trust was not guilty of laches: Gress's App., 14 Pa. 463; Maulfair's App., 110 Pa. 402; Fidelity Ins. Trust & Safe Deposit Co.'s App., 115 Pa. 157; Henry's Est., 198 Pa. 382.

*John G. Johnson*, with him *Maurice Bower Saul*, for appellee.—The payments to the guardian were proper and the adjudication of his account was conclusive of their propriety: Bentel's Est., 33 Pitts. Leg. Journal, 177; Bayard v. Atkins, 10 Pa. 15.

OPINION BY MR. JUSTICE STEWART, July 6, 1911:

Under the will of Elizabeth Pleasonton, deceased, probated August 6, 1894, the Pennsylvania Company for Insurances on Lives and Granting Annuities, the appellee here, received the sum of $20,000 upon the following trust, "To invest and keep the same invested and receive the interest and income thereof and apply the same, or so much thereof as shall be needed, for the support, maintenance and education of my great niece, Elizabeth Hoge Pleasonton, until her age of twenty-one years or marriage whichever shall first happen; and from and after her full age aforesaid, or marriage, to apply the net income for her sole and separate use, without the control or interference of any husband whom she may marry, and so that she shall not have power to dispose thereof by anticipation." A power in said Elizabeth Hoge Pleasonton to dispose of the said principal sum by testamentary act follows, a power which she exercised in full accordance with the directions of the trust. This circumstance does not enter into the present controversy, and we have quoted from the will only what is here pertinent. On the petition of the father of Elizabeth Hoge Pleasonton, who was then twelve years of age, the court appointed J. M. Stone, Jr., guardian of the minor's person and estate. On September 25, 1905, the minor having several months before arrived at full age, the guardian filed a final account of his guardianship, in which he debited himself with the entire income received from the $20,000 trust fund in the hands

of the Pennsylvania Company for Insurance on Lives, etc., and which at regular stated periods that company had paid over to him. The account included nothing besides. The credits claimed were for sums expended for the support, maintenance and education of the ward. A cash balance due the ward of $1,763.77 was shown, and this upon final confirmation of the account was duly paid over. In the adjudication proceeding on this account, the ward was duly represented by counsel, and was herself personally present. The account was confirmed December 9, 1905, no exceptions having been filed. On March 21, 1910, at the request of counsel for appellant, the Pennsylvania Company for Insurance on Lives, etc., filed its account as trustee under the will of Elizabeth Pleasonton, in which it debited itself with all the income derived from the principal sum of $20,000, and took credit for payment* of the sums to the guardian of the cestui que trust during the latter's minority, embracing the same items with which the latter had debited himself in his final account. These credits were objected to on behalf of the appellant, on the ground (1) that the accountant was itself the testamentary guardian of Elizabeth Hoge Pleasonton, and that with respect to this particular fund the appointment of any other person was a nullity; (2) that under the terms of the trust it was the duty of the trustee to apply the income, or so much thereof as should be needed, for the support, maintenance and education of the cestui que trust, and that by paying over the entire income and accumulation to a third person, without inquiring into the necessity of the payments or seeing to the application thereof, the trustee had disregarded its duties and should be surcharged. These objections did not prevail with the auditing-court; the account was confirmed, and we have this appeal from the final adjudication. The same objections which were relied upon below are urged upon us here. While it is incorrect to say that the appellee was testamentary guardian of appellant, it is unquestionably true with respect to this particular trust fund and its in-

crement, that the legal guardian was without authority or responsibility in connection therewith. The power and duty of the appellee with respect to it were defined in the will of Elizabeth Pleasonton. It was to its legal discretion, within defined limits, that the will committed the employment of the income derived from the fund. The utmost limit to which the legal guardian's interference could have gone, would have been to ask the intervention of the court in case of abuse of discretion on the part of the trustee in failing to perform a manifest duty. This however is a minor consideration in the determination of the appeal. The real question is, what effect is to be given the final confirmation of the guardian's account in the present controversy? Admittedly the money expended for the support, maintenance and education of his ward, and for which the guardian is credited in that account, was the interest and income which the appellee derived from the trust fund it had in its keeping. Were these expenditures proper and legal? Unquestionably they were proper subjects of a guardianship account, and, that being so, the confirmation of the account, until a rehearing or a review be allowed, must be held to be conclusive on all the world. The confirmation is in itself an adjudication that the expenditures for which credit was allowed were both proper and legal. If proper and legal for the guardian, why not for the trustee, their duties and obligations being the same? In the earlier proceeding appellant had full opportunity to contest these credits, and she knew that the expenditures on which they were based were from the income of the trust fund. She remained silent and assented to the decree of confirmation. Had the credits been disallowed at her instance, her trustee would have remained liable to her, pro tanto, notwithstanding the fact that it had paid the money over to the guardian. On the face of the facts, as we are given to understand them, in paying the money to the guardian the trustee was without excuse, and it paid at its own risk that the guardian would apply it in a way that would be

subsequently approved. The payments were subsequently approved, and having been adjudicated, the end of the controversy with respect to them was reached. It is a settled principle that a decree of the orphans' court confirming an account, is, in all cases, conclusive of the matters contained in it, when attempted to be drawn in controversy in a collateral action: Clark v. Callaghan, 2 Watts, 259.

But, it is said, the trustee has been derelict in its duty in failing to exercise its own judgment and discretion in expending the money, and committing this duty absolutely to the guardian. The answer to this is, conceding it to be true, if harm or loss has resulted, it is due to the silence and acquiescence of appellant when she should have spoken and resisted. She had her day in court when these matters of expenditure were being adjudicated. That adjudication is a judicial finding that no harm or loss did result from the particular expenditures here complained of. We quite agree that it was the bounden duty of the appellee, under the terms of this trust, to study for itself the conditions calling for the expenditure of the money, and to acquaint itself with the situation of the cestui que trust, so as to be able to exercise a sound discretion in the matter of disbursement. The confidence reposed was in the judgment and discretion of the trustee, and not in that of an unnamed guardian. Apparently the trustee wholly neglected this duty and committed it to the guardian. While no actual loss because of this is shown, it was nevertheless such a plain and manifest dereliction of duty, that had a forfeiture of right to commissions been decreed on this account, the appellee would have had little reason to complain. The allowance of commissions to the trustee is however not assigned for error, and since it is not complained of, we shall not interfere. In what we have said above all the assignments of error have been considered; they are overruled, and the decree of the court is affirmed, the costs on the appeal to be paid by the appellee.