Daniels, Appellant, *v.* Metropolitan Life Insurance Company.

Argued October 20, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Abraham T. Needleman,* with him *Irving J. Katz,* for appellant.

*Owen B. Rhoads,* with him *John Bishop, Dechert, Smith & Clark,* and *Harry Cole Bates,* for appellee.

OPINION BY RHODES, J., April 21, 1939:

Appellant was the beneficiary of a life insurance policy issued by appellee company upon the life of appellant's father, Dread Daniels. He died on December 10, 1932, when she was seventeen years of age. This policy contained a provision as follows: "When the beneficiary

is a minor and the right to change the beneficiary has not been reserved, the insured cannot dispose of the policy during the beneficiary's minority.

"When the death of the insured occurs during the minority of the beneficiary, a guardian must be appointed to collect the insurance for the minor."

Appellant's father left a will by which he made the following provision for the guardianship of appellant and her brother:

"Whereas it is my desire that my said sister, Mrs. Daisy Roberts shall act as guardian of my said two children, and whereas my said sister is willing to so act as guardian, 'loco parentis' to my said two children,

"Therefore, in consummation of my said desire, I do hereby constitute and appoint my said sister, Mrs. Daisy Roberts, in the event of my death, to have full charge and control of my said two children until they have reached such maturity that they can safely take care of themselves. It is also my desire that my said sister shall have charge and possession of any assets which my children now have, or may become possessed of at my decease.

"It is also my desire that whatever monies my said two children may collect from any insurance policies that shall accrue to my said two children at my death, provided the by-laws of the company are not to the contrary, shall be paid over to my said sister, to be applied toward the maintenance and support of my said two children, Henry and Ida Daniels."

On February 3, 1933, appellant and her brother, in a petition to the Orphans' Court of Philadelphia County, consented to by their aunt, Daisy Roberts, asked the appointment of their uncle, Alexander Daniels, as guardian of their persons, and a decree of such appointment was made by STEARNE, J.

On February 28, 1933, appellee issued to the order of "Alexander Daniels Guardian of the Person of Ida M.

Daniels Minor," its draft in the sum of $1,026.01, the entire proceeds of the policy in question.

Appellant, upon coming of age, made demand upon appellee for the value of the policy, with interest, and upon refusal of her claim instituted this action in assumpsit on August 17, 1937. Appellee had issued a writ of scire facias directed to Alexander Daniels to add him as a party defendant. At the trial appellant made out a prima facie case by offering in evidence the life insurance policy, and such portions of the statement of claim as were admitted or not denied by the affidavit of defense. For the defense the guardian of the person testified substantially that with the money which he had .received from appellee he paid the expenses of deceased's funeral and last illness, and applied the balance to the use and benefit of his ward, the appellant. He admitted that he had made affidavit in the guardianship proceedings that he was in a position to provide for the maintenance and support of his wards; that he had not stated in those proceedings any facts respecting collection of proceeds of an insurance policy, or filed any bond in the orphans' court, or deposited the proceeds of the draft in his name as guardian, but to his own individual credit. It was also conceded that his expenditures on appellant's account were without benefit of an orphans' court order.

There was other testimony concerning admissions on appellant's behalf by her counsel of receipt of some of the payments testified to by Alexander Daniels. The court submitted this testimony to the jury as bearing upon the question of fact whether appellant had received the full proceeds of the policy with instructions that she could recover only the balance unaccounted for, and also left it to the jury to say whether the guardian had received the fund under color of right, as affecting appellant's claim to interest on the fund. Points for binding instructions submitted by both sides were declined, and

the jury found for the defendant. Appellant's motions for judgment n.o.v. and for a new trial were refused.

We have before us seventeen assignments of error, only the first of which, that of refusal of appellant's motion for judgment n.o.v., requires our attention.

Appellee takes the position (1) that when payment was made to Alexander Daniels, guardian of the person, its obligations, under the language of the contract entered into between itself and Dread Daniels, the insured, were completely fulfilled; and (2) that even though Alexander Daniels had no authority to receive the proceeds of the insurance policy, nevertheless appellee is entitled to credit for all the moneys which were actually expended therefrom for the benefit of appellant, since it was proper for Alexander Daniels, as guardian of the person of appellant, to credit himself with the amounts so expended, the same credits being allowable to appellee in this action.

The burden at the trial was on appellee to prove that Alexander Daniels, guardian of appellant's person, was legally authorized to receive payment of the proceeds of the insurance policy, and so to discharge appellee. It is a recognized principle of law that one who pleads payment to a person other than his creditor must prove the authority of such person to receive payment (see *Wayne Tank & Pump Co. v. Thomas Petroleum Products Co.,* 83 Pa. Superior Ct. 158; *Rodgers v. Fleming,* 325 Pa. 228, 234, 188 A. 861), and payment without such authority is no defense (48 Corpus Juris pp. 589, 590, §4). In this connection appellee contends that under the terms of the contract, which provides that during the minority of the designated beneficiary payment must be made to a guardian, the obligations of appellee thereunder could be discharged by payment either to a guardian of the person or a guardian of the estate appointed either by the orphans' court or by the register of wills. In support of this contention appellee cites section 59 (h) (j) 1

of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §§1041, 1043, as imposing upon "every guardian" the duty of filing an inventory of, and accounting periodically for, the property of his ward, and argues that the failure of these sections of the act to distinguish between guardians of the person and guardians of the estate is a legal justification for the payment to the guardian of appellant's person. An answer to a part of this argument is found by reference to section 59 (a, b, d, e, and f) 20 PS §§1021, 1022, 1024, 1025, 1026, of the same act, as amended, which clearly differentiates between the two classes of guardians. Nor does it help appellee to point to section 101, art. 8, of the Act of May 28, 1937, P. L. 1019, 46 PS §601, otherwise known as the Statutory Construction Act, as containing this definition, "(47) 'Guardian,' a fiduciary who legally has the care and management of the person, or the estate, or both, of another under legal disability," since the definition recognizes both types of guardian as included within the general category. Two classes of guardians have long been recognized. See *Senseman's Appeal*, 21 Pa. 331. As stated in *Brill v. Brill*, 282 Pa. 276, 127 A. 840, natural guardianship confers no right to intermeddle with the property of the infant, but is a mere personal right in the father or other ancestor to the custody of the person of his heir apparent or presumptive until attaining 21 years of age, and that a natural guardian or a guardian by nature has no authority whatever to exercise any control over the estate of the minor. See Lewis's Blackstone, vol. 1, §461, note 4. Guardian by nature is the father, and on his death the mother; and the authority of a guardian of the person is derived out of that of the parent, such guardian being only a temporary parent, that is, for so long a time as the ward is an infant, or under age,[1] who performs the office of tutor of the Roman law (*Senseman's Appeal*, supra, p. 333). A person having control of the property

---

[1] Lewis's Blackstone, vol. 1, § 460.

of a minor without that of his person was known in the civil law by the name of curator, who had care of the minor's fortune or was the committee of his estate.[1] Guardian of the person is invested with the care of the person of the minor; while guardian of the estate is entrusted with the control of the property of the minor. Of course, the same person may be appointed as guardian both of the person and of the estate of the minor. The guardian of the person of a minor in this state has no authority to demand, or power to receive, hold, or manage the minor's property, and payment itself to him does not discharge a debtor's liability to the minor. Payment by appellee to a guardian to whom payment could not lawfully be made did not discharge appellee's obligation to appellant. A guardian to whom payment could properly be made under appellee's policy in the instant case must be a guardian legally qualified to collect the insurance for the minor. See *Wuesthoff et al. v. Germania Life Ins. Co.*, 107 N. Y. 580, 14 N. E. 811; *New York Life Ins. Co. v. Gilmore*, 40 Ga. App. 431, 149 S. E. 799.

We are of the opinion that appellee's payment of the proceeds of the insurance policy in question to the guardian of appellant's person was not a fulfillment of its contractual obligations, and does not excuse it from the liability sought to be enforced by appellant in the present action. We are unable to say, as appellee would have us do, that the Fiduciaries Act of 1917 justifies payment of the property of a minor to any person except one who represents that as his purpose in applying to the orphans' court for authority to receive property on behalf of the minor, and who so subjects himself at least to the discretion of that court in requiring him to evidence his financial responsibility, or in the alternative to post security. See Fiduciaries Act, §59 (g), 20 PS §1027. To sanction appellee's contention would destroy the safeguards which our law has for centuries labored

to erect about the estates of minors, and place upon such minors the hazards and uncertainties which would result from the receipt and control of their property by unauthorized and financially irresponsible individuals, utilizing and distributing the minor's funds without the sanction of any tribunal. We therefore conclude that appellee was not discharged of its liability to appellant by payment of the proceeds of the policy to the guardian of her person.

Appellee's second proposition advanced as a defense to appellant's recovery is likewise untenable. Although from the evidence in the case the jury could not possibly find that all the moneys received by Alexander Daniels from appellee had been used for the benefit of appellant during her minority, and hence the judgment could not be sustained, it is unnecessary to give further consideration to this phase of the case as the disposition by Alexander Daniels of any funds which were entrusted to him by appellee as the guardian of the person of appellant is immaterial to the issue here. By statute the care of the persons of minors and of their estates is in the orphans' court. See Fiduciaries Act of 1917, §59 (a), 20 PS §1021. The orphans' court is the proper tribunal to exercise jurisdiction of estates of minors, and of the settlement of the accounts of their guardians, and of all questions of allowance for maintenance. A guardian of the person or of the estate of a minor is an officer of the orphans' court; the minor is a ward of that court. "Those who deal with either guardian or minor must deal subject to the approval or disapproval of this one tribunal, else there will be an end of intelligent administration and a beginning of the evils resulting from conflict of jurisdiction. If the common pleas may take cognizance of questions of allowance, it may take cognizance of the conduct of the guardian and the settlement of his accounts, for the one involves the other; this the law will not permit": *Johnstone v. Fritz,* 159 Pa. 378, at page

380, 28 A. 148, at page 149. If moneys were expended by Alexander Daniels as guardian, and he claims an allowance or reimbursement, the orphans' court would be the proper tribunal for him to have applied to in order to have his account settled and his claims allowed. See *Carl v. Wonder*, 5 Watts 97. It cannot be found in this action that the alleged disbursements by the guardian of appellant's person were proper and for the minor's benefit. See Fiduciaries Act of 1917, §59 (i), 20 PS §1042. They were the proper subjects of a guardianship account. "It is a settled principle that a decree of the orphans' court confirming an account, is, in all cases, conclusive of the matters contained in it, when attempted to be drawn in controversy in a collateral action: *Clark v. Callaghan*, 2 Watts, 259": *Pleasonton's Estate*, 232 Pa. 381, at page 386, 81 A. 420, at page 421. Appellee has no standing in the court of common pleas to use unauthorized payments by such guardian during appellant's minority and disability as a setoff against appellant's claim, as that court has no jurisdiction of the subject matter. Even if the guardian of the person had properly spent moneys on appellant while a minor, he could not recover on that ground alone in the common pleas. Certainly appellee occupies no stronger position than does such guardian. To sustain appellee's theory would give appellee, as the result of the testimony of the guardian of the person, that which the guardian could not establish for himself in the court of common pleas—that is, credits for alleged payments made to or on behalf of appellant as a minor without authority from, or approval by, the orphans' court which has sole jurisdiction thereof.

*Gilfillen's Estate*, 170 Pa. 185, 32 A. 585, cited by appellee as authority for allowing an interloper to be considered as a guardian de son tort and to be credited with payments on a minor's account, is itself a recognition of the exclusive jurisdiction of the orphans' court over

such matters. It is also true of *Wauhoup's Estate*, 29 Pittsb. Leg. J. 256, and *Lafferty's Estate*, 147 Pa. 283, 23 A. 445, cited by appellee, in which allowance was made for past support of a minor, that the question arose upon the settlement of accounts in the orphans' court.

*Cooper v. Byrich*, 6 Pa. Superior Ct. 200, cited by appellee as authority for setoff, involved a contract for the sale of pork, which was not completed until after the death of the seller, when payment was made to his widow who used part of it to pay the funeral expenses of decedent. It was there held that the estate of the seller being solvent the buyer would not be liable to the administrators for so much of the payment made to the widow as was used by her to pay the debts of the estate. It was also held that executors de son tort are entitled to have credit for valid debts of decedent actually paid by them out of assets upon which they have intruded, and hence those whose money afforded the relief which the decedent's estate secured by such payment should have the benefit thereof, for, under such circumstances, the property would have passed into a quasi administration which it would be inequitable to disturb. We are of the opinion that this holding has no bearing upon the present question of the exercise of a function possessed exclusively by the orphans' court, and it follows that the trial court was in error in submitting to the jury the issue of fact whether appellant received, during her minority, the payments alleged to have been made to her on her behalf by the guardian of her person.

The trial judge having erroneously denied appellant's point for binding instructions, appellant's motion for judgment notwithstanding the verdict should have been granted.

Judgment is reversed, and judgment is here entered for plaintiff and against defendant, Metropolitan Life Insurance Company, in the sum of $1,000 with interest from December 10, 1932.