# Urquhart Trust (No. 1)

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Henry L. Schimpf, Jr.*, for exceptants.

*Philip A. Bregy, MacCoy, Evans & Lewis; Isidor Ostroff* and *Ostroff & Lawler*, contra.

LEFEVER, J., December 22, 1967.—The real parties in interest are Radcliffe Morris Urquhart, settlor and income beneficiary of the instant trust, and exceptants, his brother, G. Gordon Urquhart, his nephew, G. Gordon Urquhart, 2d, and his niece, Marilyn U. Consentino, who are contingent remaindermen of the trust. Exceptants have instituted and vigorously pressed litigation in the Orphans' Court of Chester County, the Supreme Court of Pennsylvania and in this court, in an effort to limit or prevent invasion of the principal of the trust for settlor's benefit and thereby keep intact their remainder interests.

Technically, the present issue is between except-ants and the corporate trustee of the trust, although the decision thereon vitally affects settlor and his mode of life. Exceptants contend that the trustee should have been surcharged for paying direct to settlor $1,500, in cash, monthly for 21 months, to defray his general living expenses. They urge that such payments were improper, because (1) he has been adjudicated incompetent by decree of the Chester County Orphans' Court (which decree was affirmed by the Supreme Court); (2) the trustee did not make sufficient investigation into settlor's needs to justify paying this or any other regular amount of cash direct to him; and (3) the trustee did not require any detailed accounting by settlor as to his expenditure of these monthly sums. The exceptions before us are directed to the auditing judge's refusal to impose the requested surcharge.

We have read the briefs of counsel and the record in the instant case. We have also carefully examined the entire record in the incompetency proceeding in the Chester County Orphans' Court and in the Supreme Court, which appears in volume 4979, paper books of the Supreme Court of Pennsylvania, 418 Pa. 185-203. The latter record sheds much light on the issue now before this court.

Three psychiatrists, one internist and one psychologist testified. They agreed generally as to settlor's impaired physical condition but disagreed as to his mental competency. Several were of the opinion that he was no longer able to manage his financial affairs and was likely to become the victim of designing persons; however, they concluded that he was lucid on most matters and certainly "was not crazy". Others were of the opinion that he was completely competent. A number of tradesmen and lay people, who knew settlor well and had long dealt with him, testified that

he was fully capable of handling his domestic financial affairs. Settlor appeared in person and testified at length. He showed general awareness of his finances and his family status. He knew his relatives, but was angry and hurt that exceptants had filed the petition to have him declared incompetent. He was displeased that exceptants apparently disapproved of his contemplated marriage to his present wife, whom he testified he loved and who later took the witness stand and testified that she loved him. He was aggrieved by the Baptist Church, to which he had made sizable gifts, and with which he had later become involved in litigation.

The records in the incompetency proceedings and in the instant case are devoid of any evidence that settlor has ever mishandled any amounts of money, or that he is incapable of handling sums of money sufficient for the operation of his households in Chester County and Fort Lauderdale, Fla., and for the maintenance and support of his wife and himself. Per contra, it appears that, although he indulged in a peculiar form of mathematics, he is quite capable of handling at least ordinary sums of money. President Judge MacElree's adjudication of incompetency contains the following apparently apt description of him by one of the psychiatrists:

". . . the doctor stated that in his opinion the respondent had always been an eccentric person for a great deal of his life; that he would call him cantankerous, blustery, curmudgeon-like . . .

"Asked specifically whether he had an opinion as to Mr. Urquhart being liable to dissipate his property, he replied that he had an opinion, that he did not think he would, that he, the respondent had told the doctor how he planned to spend his property, that he believes with counsel the respondent would be adequately pro-

tected and that in his opinion the respondent is not really a good business man".

There are various grades of incompetency, ranging from the raving maniac or the completely comatose to the elderly gentleman who, by reason of advancing years, has become somewhat forgetful and less aware of his property and his financial affairs, although knowledgeable on other matters and usually completely lucid about his own affairs. In the first situation, the guardian of the incompetent's estate should make all financial decisions and pay all of the incompetent's bills. In the latter situation, major financial decisions and large bills should be paid by the guardian but reasonable amounts may properly be disbursed direct to the incompetent to enable him personally to pay ordinary daily living expenses. Such a course of action preserves the dignity, the stature, the position in society and the way of life of an aging person. The responsibility constitutes good therapy.

What standing do exceptants have to object to the account of the trustee in this case? If the monthly payments had been made by the bank, as guardian of the incompetent, exceptants would have little standing to complain. The primary concern of the court in incompetency matters is that the incompetent be adequately maintained and cared for during his incompetency in a manner compatible with his accustomed standard of living. Courts should not curtail allowances which benefit the incompetent, merely to enlarge his estate for those who take after his death. The guardian and the court should err on the liberal side, especially where, as here, the remaindermen are collaterals.

In Bryden's Estate, 211 Pa. 633, 636, the lower court stated:

"Before an estate can be taken from the owner and transferred to a guardian, it must be established that the respondent is so weak in mind that he is unable to take care of his property, and in consequence thereof is liable to dissipate or lose the same and to become the victim of designing persons. The act is for the protection of the respondent and is not intended to prevent the owner of an estate from doing with his own what he pleases in order that his children may inherit a greater amount".

And the Supreme Court, in a brief per curiam affirmance, stated, at page 637:

"This is a very clear case of attempt by children to take their mother's property out of her control not in her interest but in their own, and is an illustration of the dangers of the statute referred to in Hoffman's Estate, 209 Pa. 357".

Significantly, the records in this litigation fail to reveal the slightest manifestation of interest by the exceptants in the incompetent, or concern for the needs of himself and his wife. On the contrary, exceptants, upon whom the settlor (prior to the adjudication of his incompetency) had lavished gifts and affection, have forced him to submit to distasteful examinations by psychiatrists of their choosing; have subjected him to the strain and expense of a four-day incompetency hearing and several hearings in this court; have inflicted upon him the stigma of an adjudication of incompetency, despite the existence of a deed of trust adequate to protect settlor's needs; have opposed payments of cash directly to him by the trustee out of the trust created with his own money; and now seek to impose surcharge upon the trustee who paid those sums of money.

True, the distribution here was made by the trustee of the inter vivos trust created by the incompetent, rather than by his guardian. However, the incom-

petency case is at least indirectly involved, because the Chester County Orphans' Court has appointed the trustee, Provident National Bank, as guardian of the incompetent's estate. The sole assets in the possession of the bank, as guardian, are extensive real estate holdings in Chester County, having a value of upwards of three-quarters of a million dollars, most of which is unproductive. Therefore, the maintenance, care and support of the settlor-beneficiary-incompetent and his wife, and the operation of his homes in Chester County and in Fort Lauderdale must come from the income and principal of the trust estate. It is significant that, in accountant's brief contra the exceptions, and Trust Officer Callaghan's testimony, it appears that President Judge MacElree indicated to counsel in chambers during the incompetency proceedings that "he felt Mr. Urquhart should be supported in a manner which was fitting to his income he had been used to receiving" and "his counsel asked $2000 a month—$2000 or $2500 a month, and we settled on $1500 as a reasonable figure".

The owner of a vested or contingent remainder in a trust has a right to object to items in a trustee's account. It is doubtful, however, whether a person holding an expectancy has such a right. If settlor were competent, the exceptants' contingent remainder under the deed of trust would be more like an expectancy, because the deed is expressly revocable, and broad powers are vested in settlor and the trustee to invade principal for the benefit of settlor-life tenant. However, the adjudication of settlor's incompetency made exceptants' contingent remainder more certain. Hence, it seems clear that they had the legal right to object to the present account. A fortiori, the trustee had a duty to vouch the account. Therefore, exceptants were entitled to examine into the propriety of the expenditures made on behalf of the income benefi-

ciary, whether directly or indirectly. A trustee, in the exercise of the discretion vested in it by the trust instrument, even though very broad, must legally exercise this discretion and disclose the basis for the exercise of that discretion: Estate of Krysostom M. Lychis, no. 2651 of 1953, opinion of this court, dated November 17, 1967. It follows that it was error for the auditing judge to refuse to permit exceptants' counsel to continue his interrogation respecting such expenditures.

We are of the opinion that this error of the auditing judge was harmless. The records in this case and the incompetency proceeding reveal that (1) settlor was a person of considerable intelligence who had amassed a fortune through his inventions and wise investment in real estate; (2) he had never theretofore become a prey of designing persons or had squandered sums of money, large or small; (3) on most points he was completely lucid; (4) he had become accustomed to a life of luxury with homes in Fort Lauderdale and Chester County, with servants, automobiles, airplane trips, journeys to Europe and all the other usual accompaniments of considerable wealth; (5) subsequent to the adjudication of incompetency he had married the woman of his affection (although the records do not disclose what official issued the marriage license or when or where the marriage ceremony was performed), and, as a consequence, he now had the additional expense of supporting and maintaining a wife; (6) $1,500 a month is not an excessive sum of money in this day of inflation and high prices to provide groceries, servants, clothing, medical services, airplane tickets, automobiles, and to maintain a millionaire's households in Florida and Pennsylvania, etc., etc. Trust Officer Callaghan testified that the trustee was aware of settlor's general needs and the normal costs of operating his households; was mind-

ful of Judge MacElree's observation in chambers about incompetent's support; and hence, the trustee paid direct to settlor $1,500 per month for 21 months.

In light of the facts of this case, we are satisfied that this was a reasonable sum. In any event, there is no indication that the trustee *abused* its discretion in paying these monthly amounts. Therefore, the auditing judge properly dismissed exceptants' request for surcharge. However, the trustee would have been well advised to make a more thorough and searching investigation as to the needs of the incompetent-income beneficiary and the requirements for the care, support and maintenance of himself, his wife and his households, and to have advanced cash payments to him consistent with the needs and requirements shown by that investigation, rather than to choose a regular lump sum without further documentation of the items involved, as has been done.

The instant deed of trust provides "during my life my trustee shall pay to me the income and so much of the principal as I may elect to withdraw from time to time". With the express written consent of the attorneys for all the parties, including the exceptants, Judge Saylor entered an interim decree, dated December 31, 1964, which authorized the Provident National Bank "to exercise all the powers given therein to the trustees, including but not limited to the discretionary power to use principal for the needs of the Settlor as set forth in Item II A of the Deed of Trust as amended July 16, 1963". That item provides:

"*Minority and Disability.* In order to avoid court proceedings for the appointment of guardians, I direct that if any beneficiary hereunder is a minor or in the opinion of my corporate trustee is unable to handle his or her affairs because of *advanced age, illness or other condition,* such trustee shall during such minority or *disability* retain whatever principal or income

such beneficiary otherwise would have received under the dispositive provisions hereof (including principal which a beneficiary has power to withdraw) and shall apply so much of it as such trustee considers advisable *for the welfare of the beneficiary or his or her dependents*, accumulating any income not needed for these purposes". (Italics supplied.)

The aforesaid interim decree was proper and justified: Partridge's Estate, 241 Pa. 158; Pleasonton's Estate, 232 Pa. 381.

It is elementary that a beneficiary may be estopped by acquiescence from attacking a trustee's actions of which he has had adequate notice: Miller's Estate, 333 Pa. 116 (1939); Grote Trust, 390 Pa. 261; Greenwald's Estate, 345 Pa. 119 (1942).

In the present case, there is uncontradicted documentary evidence that the trustee and its counsel made every effort to keep exceptants informed and to invite their comments if they disagreed. The letter of trustee's counsel addressed to the interested parties, dated July 21, 1965, stated that "it would be well for you all to have a short summary of the rate at which principal is being consumed for Mr. Urquhart's needs", and pointed out that in the 10-month period covered by the earlier draft of the supplemental account, principal distributions totalled over $17,000 and income distributions nearly $10,000. It added "the Provident's current practice is to pay Mr. Urquhart $1,500 a month in cash and, in addition, to pay various bills on his behalf which he sends in". The letter then invited the parties to examine the draft of the supplemental account. No complaint was made by exceptants or their counsel to the stated practice. Moreover, Mr. Callaghan testified that "shortly after we commenced" the $1,500 monthly allowance, he discussed the allowance with exceptant, G. Gordon Urquhart, 2d, who made no objection at that time.

Finally, as stated above, the exceptants' counsel agreed that the corporate trustee should exercise all the powers set forth in the deed of trust. Accordingly, even if there were an abuse of discretion by trustee in this case, the doctrine of estoppel would preclude imposition of a surcharge.

In conclusion, it appears that exceptants objected to the payments made to settlor for maintenance of himself and his wife, not because of concern for him, but for their own benefit. Distribution of $37,338.96 per year, from principal and income, covering medical bills, payments of principal and interest on loans, cost of major improvements and purchases, and payments of a monthly allowance of $1,500 direct to the incompetent to maintain two households and cover all the normal general living expenses of him and his wife was not excessive for a millionaire, aged 75, who has long been accustomed to comfort and luxury. Payment of a reasonable monthly sum to him preserved his dignity, his self respect and his position in the community. The auditing judge properly refused to impose a surcharge.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.