## KERRIGAN'S ESTATE v. JOSEPH E. SEAGRAM & SONS, Inc. et al.
### No. 10750.

United States Court of Appeals Third Circuit.

Argued Oct. 14, 1952.

Decided Nov. 12, 1952.

Henry Arronson, Philadelphia, Pa., for appellant.

H. Eugene Heine, Philadelphia, Pa. (Frank M. Lario, Camden, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

696

GOODRICH, Circuit Judge.

This action, brought by an executor against J. Grant Kerrigan and three distilling corporations, raises two questions. The first has to do with federal jurisdiction. If federal jurisdiction may be maintained, the second question involves a rule of conflict of laws and a rule of contracts.

We shall deal with the jurisdictional point first. The plaintiff is a Pennsylvania domiciliary who has qualified as the executor of a New Jersey decedent. He sued in federal court Seagram & Sons, an Indiana corporation, Jameson & Co., a Delaware corporation, the Carstairs Bros. Co., a Maryland corporation, and J. Grant Kerrigan, a domiciled Pennsylvanian. Two of the distilling companies were sued on contracts made by them with Joseph P. Kerrigan, the plaintiff's testator, and J. Grant Kerrigan. Seagram is sued because it assumed the obligation of these contracts. J. Grant Kerrigan is sued because the plaintiff-executor alleges that he received payments upon the contract after the testator's death to which the executor was entitled.

The theories of the claims against the distillers and the individual defendants are thus wholly different. The distillers are being sued upon a contract to which plaintiff's testator was a party. J. Grant Kerrigan is being sued by the executor because it is claimed that he has received money to which he is not entitled. As between J. Grant Kerrigan and the plaintiff there is no diversity of citizenship. It is immaterial that the testator died domiciled in New Jersey. The plaintiff-executor is a Pennsylvanian and it is his domicile that counts, not that of his decedent. Coal Company v. Blatchford, 1870, 11 Wall. 172, 20 L.Ed. 179.

How then can this case come to and stay in federal court? The parties have lightheartedly disregarded this question and it evidently did not trouble the district court either. The only thing we have to go on which helps maintain the existence of federal jurisdiction here is a stipulation entered into among the parties following the filing of a counterclaim by the corporate defendants. Under that stipulation J. Grant Kerrigan and the plaintiff-executor "are hereby required to interplead and settle among themselves their rights to the money deposited pursuant to this stipulation."

If this can be construed to turn the action against Seagram into one in the nature of interpleader under rule 22(1), Fed. Rules Civ.Proc. 28 U.S.C. then we may treat the action by the executor of Joseph P. Kerrigan against J. Grant Kerrigan as a cross-claim under rule 13(g) which, since it arises out of the same general transaction, may be brought into this litigation and cleared up along with the settlement of the claim to the larger sum for which Seagram is liable under the contract it made. Bank of Neosho v. Colcord, D.C.Mo.1949, 8 F.R. D. 621. No further pleadings were filed to clarify the application of this interpleader theory and the whole matter was left in the somewhat informal fashion to which it was brought by the stipulation.

Nevertheless, with some hesitancy, we shall uphold the exercise of federal jurisdiction. We are accustomed to the application of the rule that pleadings may be treated as amended to conform to proof. F.R.C.P.Rule 15. 3 Moore's Federal Practice 846. Analogous situations include treating an action erroneously brought at law as transferred to equity (3 Moore's Federal Practice 822), and treating issues actually tried as having been raised in the pleadings (Id. at 843). Certainly a pleading is judged by its substance and not its form, e. g. whether a claim is a counter-claim or cross-claim depends not on what it is labeled but whether the party against whom it is asserted is an opposing party or a co-party. 3 Moore's Federal Practice 15. Amending to show jurisdiction is liberally granted when the court in fact has jurisdiction. 3 Moore 831, 836. As a practical matter the only reason for not allowing an amendment is prejudice to the opposing party and no prejudice can arise here where all parties concerned joined in the stipulation.

We are also accustomed to a pretty informal type of complaint in federal court under the present rules. So we think it is not too great a stretch to allow the parties to shift this particular lawsuit around so

that an original defendant who is perfectly willing to pay what he is alleged to owe becomes a plaintiff in an interpleader action, and thereby permit the two contesting parties to fight out their issue between themselves. In such an action the diversity need only be between the plaintiff stakeholder and the individual claimants. Diversity among these individual claimants is not required. Hunter v. Federal Life Ins. Co., 8 Cir., 1940, 111 F.2d 551; Mallers v. Equitable Life Assur. Soc., 7 Cir., 1936, 87 F.2d 233, certiorari denied, 1937, 301 U.S. 685, 57 S.Ct. 786, 81 L.Ed. 1343.

Return now to the merits of the case. These can be disposed of very quickly. The problem may be stated more clearly in hypothetical terms than by cluttering up the statement of the question with the details.[1] P, promisor, buys a business from its owners, A and B. P is to pay for his purchase in a given number of annual installments. By the terms of the agreement the division of each annual payment between A and B is to be determined by agreement between them so long as both live. If one dies during the continuance of the period of annual payments, then P agrees to pay all of the remaining installments to the survivor. A and B in this case are the Kerrigans. P, the promisor, is Seagram who succeeded to the obligations of the other corporate defendants. The legal question is: Does this arrangement constitute a testamentary disposition which must conform to the formalities legislatively established for wills? The district court said that it did.

For clarification the issue needs a few more words. P, the promisor (Seagram), is quite obviously not making any testamentary disposition. It, no doubt, intends to keep on engaging in its regular business throughout the period of its corporate life. What must be argued here to support the plaintiff's and the district judge's conclusion is that A and B were making testamentary dispositions to each other when they agreed that if either died before the payments were completed the other was to take all the remaining payments. The testamentary disposition, under this theory, would be the bequeathing of the share of a chose in action.

 The first thing to do is to determine what law controls. Federal jurisdiction is by diversity only. The federal court applies state law as the state court has declared it. Klaxon Co. v. Stentor Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Here we have for determination in Pennsylvania, then, an agreement entered into elsewhere. The Pennsylvania conflict of laws rule in this case is that applied generally. The reference is to the place of contracting and Pennsylvania has said so many times. See Section 332 and following, Restatement, Conflict of Laws, and the Pennsylvania annotations thereto.

In this case the place of contracting was New York. This was not found as a fact by the trial court. But it is stated as a fact by Seagram and the assertion is not denied by anyone and is circumstantially verified by the notarial seals and signatures on the documents which bear a New York origin.

Our question becomes a comparatively simple one: What effect does New York give to a contract of the type stated? References to the law of New Jersey, which was the domicile of the decedent, and like-

---

1. The detailed facts of this case are as follows: Joseph Kerrigan and his son, J. Grant Kerrigan, each owned 50% of the outstanding capital stock of a Delaware corporation. In effecting a sale of their interests the Kerrigans executed agreements with various parties named herein as co-defendants with Seagram and Sons, Inc. The obligations to the Kerrigans were assumed by Seagram in 1942 in two agreements whereby Seagram agreed to pay the Kerrigans for their stock in monthly installments for ten years, and on the death of either Kerrigan within that time to pay his share to the survivor. Joseph Kerrigan died in 1949. Subsequently Seagram paid to J. Grant Kerrigan both shares for six months under the 1942 agreements. Suit was brought by Joseph Kerrigan's executor against J. Grant Kerrigan and Seagram, claiming from the former one-half the amount paid him by Seagram after Joseph's death ($2,499.96), and from the latter one-half the funds still in Seagram's hands ($9,166.44).

698

wise to the contract law of Pennsylvania, as well as the law of wills of Pennsylvania, are irrelevant and confusing. If the New York law is that this agreement is good as a contract and is not to be treated as a testamentary disposition, then the agreement is to be enforced according to its terms.

■ We find the New York law on this subject perfectly clear and in accordance with the great weight of authority generally. That authority is set out in a long annotation in 1 A.L.R.2d. 1178. The New York cases begin with a consideration of a problem whether an agreement to pay money at a specified time after the death of the promisor, if in writing, imports consideration. Carnwright v. Gray, Ct.App. 1891, 127 N.Y. 92, 27 N.E. 835, 12 L.R.A. 845. An affirmative answer necessarily implied the conclusion that, consideration once being found, the promise is enforceable. Later cases re-enforce the conclusion thus implied. By New York law such an agreement is not testamentary but is a contract to be enforced according to its terms absent other possible defenses to it. Hegeman v. Moon, Ct.App.1892, 131 N.Y. 462, 30 N.E. 487; Johnston v. Spicer, 1887, 107 N.Y. 185, 13 N.E. 753; Re Conger, 1920, 113 Misc. 129, 184 N.Y.S. 74; Re Karlinski, 1942, 180 Misc. 44, 38 N.Y.S.2d 297, 40 N.Y.S.2d 22, 43 N.Y.S.2d 40.

This really disposes of the case. There was some argument made about an arrangement which the Kerrigans made between each other with regard to the obligation of one of the distillers. The distiller was not a party to the arrangement, which the Kerrigans made with a Philadelphia bank and subsequently revoked. Such an arangement had no effect on the original contract whatever. There could not be a novation because the promisor who was to pay the money was not a party to the arrangement between father and son. We think the continuance of that arrangement for a brief time had nothing to do with the aspect of the main contract as it comes up here.

■ The point was made also that the mutual consideration given by the Kerrigans had disappeared when J. Grant Ker-

rigan secured advances from Seagram ahead of the date of payment of installments under the contract. We think the fact of such advances has no significance here. The evidence shows that the money was borrowed from Seagram. But it was represented by notes and the obligations on those notes were immediately raised by Seagram when this action was brought. In other words, the point about the lending by Seagram and the borrowing by J. Grant Kerrigan is an irrelevant incident the consideration of which only tends to confuse the single real issue in the case.

The judgment of the district court will be reversed and the case remanded to that court for further proceedings in accordance with this opinion.