**Loretta Dixon FALLAT, Guardian of the Estate of Cyril Dixon, a Weak-Minded Person, Appellant,**

v.

**John A. GOURAN.**

**No. 11384.**

United States Court of Appeals, Third Circuit.

Argued Nov. 5, 1954.

Decided March 18, 1955.

Reuben Singer, Philadelphia, Pa. (Meade & Singer, Philadelphia, Pa., on the brief), for appellant.

Herbert A. Barton, Philadelphia, Pa. (Edward J. Cooke, Jr., Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for appellee.

Joseph S. Lord, 3d, Philadelphia, Pa. (Charles A. Lord, Richter, Lord & Farage, Philadelphia, Pa., on the brief), for amicus curiae.

Before BIGGS, Chief Judge, and KALODNER and HARLAN, Circuit Judges.

BIGGS, Chief Judge.

Dixon, a citizen of Pennsylvania, was struck in that State by an automobile driven by Gouran, also a citizen of Pennsylvania. Allegedly as a result of injuries sustained in the accident, Dixon became a "weak-minded" person and his daughter, Mrs. Fallat, a citizen of New Jersey, was appointed his general guardian by the Court of Common Pleas of

---

7. See footnote 5.

Montgomery County, Pennsylvania. As guardian for Dixon, Mrs. Fallat brought suit in the court below alleging diversity and jurisdictional amount. Gouran moved to dismiss the suit on the ground that Dixon is a citizen of Pennsylvania, that he is the "real party in interest," and that therefore his citizenship was controlling in determining diversity. The court below agreed and dismissed the suit for want of jurisdiction. See 122 F.Supp. 610. Mrs. Fallat appealed.

**I**

The primary issue on this appeal is thus whether the citizenship of the guardian or that of the incompetent is to be regarded in determining the existence of the diversity necessary for federal jurisdiction. The parties have more or less assumed that it is the citizenship of the real party in interest under state law which controls the diversity problem and have proceeded to cast their arguments in terms of who is the real party in interest here under Pennsylvania law. It is our conclusion that it is not the citizenship of the incompetent, whether or not he be the real party in interest, which governs but the citizenship of the guardian, provided he has the capacity to sue.

In City of New Orleans v. Gaines's Administrator, 1891, 138 U.S. 595, 606–607, 11 S.Ct. 428, 431, 34 L.Ed. 1102, the Supreme Court held that the plaintiff-subrogee's citizenship, rather than the subrogor's, determined the existence of diversity jurisdiction in a suit against a third party. Mr. Justice Bradley said: "[W]e have repeatedly held that representatives may stand upon their own citizenship in the federal courts irrespectively of the citizenship of the persons whom they represent,—such as executors, administrators, guardians, trustees, receivers, etc. The evil which the law was intended to obviate was the voluntary creation of federal jurisdiction by simulated assignments. But assignments by operation of law, creating legal representatives, are not within the mischief or reason of the law. Persons subrogated to the rights of others by the

rules of equity are within this principle. When, however, the state or the governor of a state is a mere figurehead, or nominal party, in a suit on a sheriff's or administrator's bond, the rule does not apply. There the real party in interest is taken into account on the question of citizenship." This statement seems to indicate clearly that the citizenship of a legally constituted guardian controls for diversity purposes and that any question as to the real party in interest is irrelevant.

This view is buttressed by Mexican Central Railway Co. v. Eckman, 1903, 187 U.S. 429, 433–434, 23 S.Ct. 211, 213, 47 L.Ed. 245, in which the Supreme Court held that a Texas guardian of an Illinois minor could sue a Massachusetts corporation in the then Circuit Court for the Western District of Texas. Mr. Chief Justice Fuller said: "The question is whether under the laws of Texas a guardian can sue in his own name to recover damages for injuries sustained by the ward, and it is unaffected by the permanent domicil of the ward. * * It is true that where a state or one of its officials is a mere figurehead, a nominal party, to a suit on a sheriff's or administrator's bond, or an action is instituted in the name of a United States marshal on an attachment bond, the real party in interest is taken into account on the question of citizenship, notwithstanding the general rule that the jurisdiction of the Federal courts depends, not on the relative situation of the parties concerned in interest, but on the relative situation of the parties named in the record. But those are instances of merely formal parties, whose names are used from necessity, and, as said in [City of] New Orleans v. [Gaines' Administrator], * * * 'we have repeatedly held that representatives may stand upon their own citizenship in the Federal courts. * * *'"

That today the foregoing is a correct statement of the rule governing United States district courts is shown by the recent opinion of the Supreme Court in Lumbermen's Mutual Casualty Co. v.

Elbert, 1954, 348 U.S. 48, 51, 75 S.Ct. 151, 154, where it was held that the diversity requirement was satisfied in a suit by a Louisiana plaintiff against an Illinois insurer under a Louisiana "direct action" statute[1] for injuries caused by a Louisiana driver insured by the Illinois insurance company. Mr. Chief Justice Warren stated: "This conclusion to disregard the tortfeasor's citizenship in the instant case for purposes of federal jurisdiction is fortified by cases honoring the states' characterization of a guardian or other fiduciary as determinative of the real party in interest in federal litigation" referring to the Gaines and Eckman cases.

◼ Thus, the means for determining the existence of diversity jurisdiction in a situation such as this is not by looking to the citizenship of the incompetent but to the citizenship of the guardian, if he has capacity to sue. Although in a comparatively recent case involving a non-resident administratrix we discussed the question of real party in interest, we based our holding as to jurisdiction on the fact that "[d]iversity of citizenship exists between the parties and this was not obtained by collusion within the meaning of the federal statute." See Jaffe v. Philadelphia & Western R. Co., 3 Cir., 1950, 180 F.2d 1010, 1013. In a later decision where an executor was a party and a question as to diversity jurisdiction had been raised, we made

no reference to the question as to who was the real party in interest and merely stated that "[t]he plaintiff-executor is a Pennsylvanian and it is his domicile that counts, not that of his decedent." See Kerrigan's Estate v. Joseph E. Seagram & Sons, 1952, 199 F.2d 694, 696. In the light of the foregoing, and with all deference due to its view, we must decline to follow the opposite decision of the Court of Appeals for the Eighth Circuit in Martineau v. City of St. Paul, 1949, 172 F.2d 777.[2]

We think it is clear that the issue is whether the guardian has capacity to sue. The difficult question is how that issue shall be determined. It seems that there are at least two obvious bases for determining the question—which by no means may supply the only criteria for the disposition of the issue—which are outlined below. Since the result is the same under either and since the parties have not briefed or argued the question, we express no opinion as to which is the correct basis.

## II

◼ In the federal courts today capacity is governed by Rule 17 of the Federal Rules of Civil Procedure, 28 U.S.C., and because of this, the most effective way to state the diversity test is in terms of capacity to sue under that Rule. Rule 82 does provide that the Federal Rules are not to be construed

---

1. LSA–R.S. Tit. 22, Section 655.

2. Although the increase in the caseload of the United States courts because of diversity jurisdiction has often been criticized (see, for example, the concurring opinion of Mr. Justice Frankfurter in Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151), there is no reason to attempt to limit that jurisdiction in this case by a deviation from precedent. The same reasons exist in large part for admitting an out of state guardian to the United States courts as for admitting any other out of state litigant. It should also be borne in mind that Section 1359, Title 28 U.S.C., protects the purity of the diversity jurisdiction by denying a litigant access to the United States district courts where a

"* * * party * * * has been improperly or collusively made or joined to invoke the jurisdiction of such court." It is not contended that jurisdiction has been obtained improperly or collusively here. Although foreign guardians may be appointed for the purpose of litigating in the federal courts where verdicts are more favorable, see The Legal Intelligencer, Philadelphia, of April 23, 1954, p. 1, col. 1, "* * * it is clear that the motive or purpose that actuated any or all of [the] parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship." Mecom v. Fitzsimmons Drilling Co., 1931, 284 U.S. 183, 189, 52 S.Ct. 84, 87, 76 L.Ed. 233.

"to extend or limit the jurisdiction of the United States district courts", but referring to Rule 17 only to define the jurisdictional test as already formulated would not seem to be prohibited. It is true that in the Eckman case Mr. Chief Justice Fuller said: "The question is whether under the laws of Texas [the State of the lower court] a guardian can sue in his own name * * *." But this decision was made when the Conformity Act of June 1, 1872, 17 Stat. 196, was in effect and required: "That the practice * * * in other than equity and admiralty causes in the circuit and district courts of the United States shall conform, as near as may be, to the practice * * * existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, * * *." It had been held that under the Conformity Act questions of capacity in the federal courts were to be decided in accordance with state law. See Albany & Rensselaer Iron & Steel Company v. Lundberg, 1887, 121 U.S. 451, 453–454, 7 S.Ct. 958, 30 L. Ed. 982, and Delaware County Commissioners v. Diebold Safe and Lock Co., 1890, 133 U.S. 473, 488, 10 S.Ct. 399, 33 L.Ed. 674. Consequently, Mr. Chief Justice Fuller, citing the Delaware County case, referred to state procedural law to define the capacity to sue portion of the jurisdictional test. Today, however, since there is a federal procedural rule governing capacity, it is proper to refer to that rule in defining the jurisdictional requirement.

The foregoing is the equivalent of saying that there is no compelling reason for reading Eckman independently of the Conformity Act. Such a view does not offend Rule 82 or the enabling Act under which the Federal Rules of Civil Procedure were promulgated, 28 U.S.C. § 2072; nor does it create a conflict with the "real party in interest" language of Rule 17(a) for that deals only with the entitling of an action.

■ In this case, the parties do not argue that Mrs. Fallat, the guardian, does not have capacity to sue. Under Rule 17, the guardian of an incompetent "may" sue in a federal court under subsection (c) only if he meets the capacity requirements of subsection (b). See 3 Moore, Federal Practice 1417 and 2 Barron & Holtzoff, Federal Practice & Procedure 27, 37. Rule 17(b) provides that the capacity to sue of a representative "shall be determined by the law of the state in which the district court is held." In Pennsylvania, where the court below was held, the guardian of an incompetent has the necessary capacity to sue. 50 Purdon's Pa.Stats.Ann. § 1781. See Campbell v. Gasparini, 1952, 171 Pa.Super. 173, 176, 90 A.2d 251, 252. Under Rule 17(a), a "guardian * * may sue in his own name without joining with him the party for whose benefit the action is brought", and the fact that Mrs. Fallat is the party of record bringing the suit here is revealed by paragraph 2 of the complaint.

Here appears an ambiguity, perhaps more apparent than real, between the provisions of subparagraphs (b) and (c) of Rule 17. Rule 17(b) seems to refer to the law of the state of the forum in determining the capacity of the guardian to sue in the federal court and in this respect might perhaps be regarded as adopting the result of earlier cases decided under the Conformity Act. Rule 17(c), however, apparently gives a guardian the right to sue in the federal courts *irrespective* of his capacity under state law. From this it might be argued, in spite of Moore and Barron & Holtzoff, that Rule 17(b) does not apply to guardians but that their capacity to sue in the federal courts now stands solely on the basis of federal law.

An interpretation of Eckman making capacity under *state* law an essential part of the jurisdictional test, rather than a mere proper reference for determining capacity according to the Conformity Act, must be confined to guardians or at least to legal representatives generally for in some instances it would not seem proper to refer the issue of capacity to the law of the state where the trial court sits. The capacity of the

individual to maintain a suit would presumably be determined by the law of his domicile, and the capacity of a corporation to maintain a suit is determined by the law of the state under which it was organized. Rule 17 makes these specific provisions and its effect in these respects must be met in the federal courts.

### III

The second and alternative basis for determining the capacity of the guardian to sue disregards Rule 17. In the Eckman case, supra, Mr. Chief Justice Fuller said: "The question is whether under the laws of Texas [the State of the trial court] a guardian can sue * *." Thus, the jurisdictional test has been fixed as whether the guardian has capacity under state law. That test cannot now be varied by referring to Rule 17 rather than directly to state law. In Jaffe v. Philadelphia & Western R. Co., supra, where we held that the citizenship of an administratrix *ad prosequendum* controlled on the question of diversity in the absence of fraud or collusion, we made no reference to Rule 17; nor did we mention Rule 17 in Kerrigan's Estate v. Joseph E. Seagram & Sons, supra, where we held that the citizenship of an executor controlled in determining federal jurisdiction on the ground of diversity of citizenship.

The views expressed under II, supra, extend the basis of our decisions in the Jaffe and Kerrigan cases with respect to the single question presented by this appeal. They were in accord with well-settled principles: Mexican Central Railway Co. v. Eckman, 1903, 187 U.S. 429, 23 S.Ct. 211, 47 L.Ed. 245, and City of New Orleans v. Gaines's Administrator, 1891, 138 U.S. 595, 11 S.Ct. 428, 34 L. Ed. 1102; recently re-affirmed in Lumbermen's Mutual Casualty Co. v. Elbert, 1954, 348 U.S. 48, 75 S.Ct. 151. Significantly, the Supreme Court did not think it necessary in the latter case to make reference to Rule 17.

As we have said in referring to the law of Pennsylvania, in accordance with the provisions of Rule 17, under the approach set out in II, supra, it is clear that the guardian has the capacity to sue under the Pennsylvania law.

It may be observed parenthetically that the parties, on this appeal, as did the court below, considered the issue of the "real party in interest" to be of paramount importance because of the provision in Rule 17(a) that "Every action shall be prosecuted in the name of the real party in interest * * *." But the guardian's endowment by the Pennsylvania statute with the capacity to sue or be sued makes the question of the "real party in interest" academic on this appeal. Eckman must be read as making capacity under *state* law an essential part of the jurisdictional test, rather than an incident flowing from the Conformity Act. Rule 17 therefore should have no part in the decision especially in view of Rule 82.

### IV

■ Whichever view is taken as to the correct interpretation of Rule 17, and of the applicability of the Rule as against a more literal reading of Eckman, we reach the same result insofar as the decision of the instant appeal is concerned. In other words, if the literal language of Eckman controls, we must reverse. As so we must if Rule 17 controls, since under Rule 17(b) the guardian has capacity to sue in the federal court because she has capacity to sue under Pennsylvania law, and under Rule 17(c) she may have capacity to sue in the federal court irrespective of what the Pennsylvania law provides.

This appeal is here because the court below construed it to be its duty under Rule 17 to ascertain who was the "real party in interest" which, of course, was error.[3] It is only fair to the court below to note that the appellate courts and the text writers have from time to

---

**3.** See Kusmaul v. Stull, 1947, 356 Pa. 276, 280, 51 A.2d 602, 604, where it was stated: "A real party in interest in any given contract or *chose in action* is the

person who can discharge the duties created, and *control an action brought to enforce rights*." (Emphasis added.)

time spoken of "real parties in interest" when they might have refrained from doing so, because the reference only served to muddy otherwise clear waters.

The judgment of the court below will be reversed.