Robert E. FARRELL, Guardian of Vincent B. Boynton

v.

Norman M. DUCHARME.

Civ. A. No. 5603.

United States District Court, D. Vermont.

Feb. 20, 1970.

James J. McNamara, McNamara, Fitzpatrick & Sylvester, Burlington, Vt., for plaintiff.

Albert W. Coffrin, Coffrin & Pierson, Burlington, Vt., for defendant.

OPINION

LEDDY, Chief Judge.

Robert E. Farrell, a citizen of Massachusetts, as guardian of Vincent B. Boynton, brought an action in the United States District Court for the District of Vermont against Norman M. Ducharme, a citizen of Vermont. The complaint alleges that on March 29, 1969, Vincent B. Boynton, a minor and a citizen of Vermont, was injured as a result of the defendant's negligent operation of a motor vehicle.

The defendant filed a motion to dismiss the action alleging that this court lacks jurisdiction of the subject matter since the plaintiff has been improperly or collusively joined to invoke jurisdiction in violation of 28 U.S.C.A. § 1359 (1964). At the hearing held on the motion, Mary Boynton, mother of the ward, testified and a certified copy of the guardian's certificate was introduced in evidence.

From the evidence, it appears that on May 29, 1969, Robert E. Farrell of Cambridge, Massachusetts, was appointed guardian of Vincent B. Boynton, age eleven years, by the Probate Court within and for the District of Chittenden and State of Vermont.

Mary Boynton, mother of Vincent, discussed the possibility of bringing suit on his behalf with Attorney James McNamara of Burlington in May of 1969. Mr. McNamara advised Mrs. Boynton that it would be advisable to have a guardian appointed to bring suit on behalf of her son. Mrs. Boynton decided that her older brother, Robert, plaintiff herein, of Cambridge, Massachusetts, was best fitted to act as guardian for Vincent. Mrs. Boynton had moved to Vermont from Massachusetts. Her mother died when she was two years old, and Robert was eighteen years old. After the death of her mother, Robert took charge of the family affairs and a close relationship developed between Robert and Mrs. Boynton. Mrs. Boynton did not feel that she would make a suitable guardian. She felt that a man

would handle Vincent's affairs more effectively and that her brother Robert, in particular, would look at matters involving the guardianship more objectively than she would as Vincent's mother. She also noted the existence of a close relationship between Vincent and Robert. Mrs. Boynton is now employed by the Visiting Nurses Association but at the time of Vincent's accident, she was a welfare recipient. She is divorced from her husband and legal custody of Vincent was awarded to her during divorce proceedings. She has no other relatives in Vermont except a twenty-three year old daughter who is married and has a family of her own. She felt that her daughter was not a proper person to be guardian. The only significant asset presently subject to the guardian's control is the possible proceeds which might be recovered in litigation arising out of Vincent's accident.

Title 14 V.S.A. § 2652 (Supp. 1969) prescribes the duties of a guardian of a minor as follows:

> A guardian of a minor appointed by the probate court shall have the care and management of the estate and, except as otherwise provided, the custody and tuition of the minor. Such guardian shall furnish him suitable employment, and provide for his education and instruction in science or some trade or profession, according to his circumstances.

Mr. Farrell was appointed primarily because, under the circumstances, he could best carry out the duties imposed by the statute. While it also appears that the acquisition of federal jurisdiction was an incidental purpose or motivation for the appointment in the case, I find from the evidence that this was not the sole or even the dominant purpose. The question thus revolves around the proper application of 28 U.S.C.A. § 1359 (1964) to Mr. Farrell's appointment. This section provides:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

The body of case law surrounding this provision is presently in a state of flux. Until recently, the law in this Circuit did not consider the appointment of a fiduciary *solely* to create jurisdiction "collusive" under the statute, Lang v. Elm City Construction Co., 324 F.2d 235 (2d Cir. 1963); Corabi v. Auto Racing, Inc., 264 F.2d 784, 75 A.L.R.2d 711 (3d Cir. 1959) as long as the appointment was a "real" transfer of powers and control. See Ferrara v. Philadelphia Laboratories, Inc., 272 F.Supp. 1000 (D. Vt.1967), aff'd per curiam, 393 F.2d 934 (2d Cir. 1968).

Following similar decisions in the Third and Fourth Circuits, the Second Circuit reversed its previous position in O'Brien v. AVCO Corp., 425 F.2d 1030 (2d Cir. Nov. 13, 1969). *O'Brien* redefines the jurisdictional prohibitions of section 1359 in this Circuit. Plainly encompassed within these prohibitions are those guardianship appointments which have as their *sole* purpose the creation of diversity jurisdiction.

Beyond the narrow situation where the singularity of purpose is obvious or admitted, the *O'Brien* rule is somewhat unclear. Two questions involving the scope of the decision must be resolved before it can be applied to this case. The first question is whether the *O'Brien* rule requires an investigation into the actual motives and purposes of every appointment or whether the nature of the appointment itself and the existence of certain facts (*i.e.* the lack of other estate assets save the expected return from the lawsuit) render it collusive regardless of actual motivation. The second question is whether jurisdiction is collusively created only where the appointment of an out of state fiduciary is deemed *solely* for the purpose of conferring jurisdiction or whether *O'Brien* intended to reach any appointment where *one* of the purposes, even though incidental, appears to be the creation of jurisdiction.

## I.

In this case, a nonresident happens to be the most logical and natural choice for appointment as Vincent's guardian. The estate, however, contains only the potential proceeds of a lawsuit. The initial question then is whether the appointment of a nonresident guardian, responsible only for possible proceeds from litigation, is deemed collusive without reference to a finding of actual motivation. I do not think *O'Brien* goes that far.

*O'Brien* involves an administrator appointed for the limited purpose of prosecuting a wrongful death action. Judge Kaufman compares the appointment of this administrator, whose sole function is to collect the proceeds of a lawsuit and turn them over to the beneficiary, with an assignment of a contract right solely for the purpose of collection, emphasizing the structural concepts of both. He notes that as a jurisdictional device the assignment for collection was condemned by the Supreme Court in Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). He concludes that the appointment before him in *O'Brien* cannot be distinguished from the assignment in *Kramer* for the purposes of section 1359.

Before the role of actual motive is understood in light of *O'Brien*, it should be analyzed in light of *Kramer*. That case involved the jurisdictional effect of an assignment for collection made by a foreign corporation to a Texas assignee. The debtor was also a foreign citizen and the Supreme Court found that the selection of an assignee was made only to create the necessary diversity. In holding that the assignment was directed solely toward the institution of a collection suit in a federal forum, the Supreme Court recognized that whenever an assignment for collection is made, litigational tactics are involved

and not a true transfer of ownership. *Kramer* relies heavily on the 1885 Supreme Court case of Farmington Village Corporation v. Pillsbury, 114 U.S. 138, 5 S.Ct. 807, 29 L.Ed. 114 (1885), which clearly separates those assignments which transfer real ownership rights and incidentally create diversity, from those typified by the assignment for collection in which the plaintiff of record is basically a nominal party whose name is being used only as an instrument of litigation, 114 U.S. at 143–145, 5 S.Ct. 807.

While *Kramer* dwells on the jurisdictional hazards which are inherent in every assignment for collection, it does not hold that the bare transactional nature of the assignment alone is indicative of collusiveness. It does not, in my opinion, adopt a pure real party in interest test which would nullify the jurisdictional effectiveness of the assignment for collection without reference to the actual purpose behind it.[1] The Supreme Court noted that the plaintiff assignee had little previous connection with the matter and indeed admitted that the assignment was in substantial part *motivated* by a desire to create the necessary jurisdiction. 394 U.S. at 827–828, 89 S. Ct. 1487. The Court reasserted the vitality of those assignment cases upholding jurisdiction where the assignee is the real owner. In so doing, it noted that when the assignment is absolute there are no jurisdictional hazards, and "* * * the transfer is not 'improperly or collusively made,' *regardless of the transferor's motive.*" (Emphasis added.) 394 U.S. at 828, 89 S.Ct. at 1490, n. 9.

The Supreme Court's reference to the irrelevance of actual motive in the case of an absolute assignment is to be contrasted with its emphasis on the circumstances and actual motivations behind the assignment for collection made to

---

[1]. Such a test is upheld on state law grounds in a Minnesota District Court opinion after *McSparren, infra*. See

Dougherty v. Oberg, 297 F. Supp. 635, 640 (D. Minn.1969).

the plaintiff Kramer. The Court suggests that *actual* purpose or motive is the final test and should be subject to close scrutiny when, but only when, the functional nature of the assignment lends itself to the manufacturing of jurisdiction by allowing the legal assignor to retain the major interest in the lawsuit. Conceivably, although improbably, the choice of an assignee for collection could be motivated strictly by personal or financial considerations with jurisdiction incidentally created.[2] If the facts should ever so demonstrate, I believe that the jurisdictional effectiveness of the assignment could be sustained under *Kramer.* Theoretically, at least, the test for identifying collusive assignments under *Kramer* appears to be two pronged. First: Is the assignment of a transactional type which places nominal plaintiffs in a position to assert the real interest of another? This standard is objective and functional. Second: Was the use of this type of transaction *actually* motivated by or designed to acquire diversity jurisdiction? Subjective purpose and motive is the inquiry here.

The Court of Appeals opinion in Caribbean Mills, Inc. v. Kramer, 392 F.2d 387 (5th Cir. 1968), aff'd 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), expressly characterized the test in the conjunctive. The Circuit Court found the assignment collusive because it was:

\* \* \* colorable in the sense that it did not divest the assignors of their interest in the lawsuit, *and* it was

made for the purpose of creating diversity. (Emphasis added.)

392 F.2d at 394.

In Ferrara v. Philadelphia Laboratories, 272 F.Supp. 1000 (D.Vt.1967), aff'd per curiam, 393 F.2d 934 (2d Cir. 1968), this Court did extend the "real" versus "colorable" distinction to the assignment of a personal injury claim. In do doing, I did inquire into the actual motive for the transfer. 272 F.Supp. at 1011. See also Case Note, 15 Wayne L.Rev. 1632, 1639 (1969). Before *Ferrara* and the Third Circuit opinion in McSparren v. Weist, 402 F.2d 867 (3d Cir. 1968) section 1359 had been largely ineffective in fiduciary cases because of the courts' refusal to examine the appointor's motives. The problem, however, has never been as severe with assignment cases. As noted in *Ferrara,* when assignments are involved, the courts have generally adopted a "colorability" test to separate those "real" assignments in which inquiry as to motive is foreclosed from those assignments which are colorable and do not preclude inquiry into motive. Steinberg v. Toro, 95 F.Supp. 791, 797 (D.P. R.1951). See Case Note, 46 Tex.L.Rev. 979, 981 (1968).

It is notable that at least one district court refused to make this distinction and held actual motive immaterial in a decision upholding jurisdiction because the assignment was valid under state law, even though the assignor retained a major interest in the lawsuit. City of Eufaula v. Pappas, 213 F.Supp. 749 (M. D.Ala.1963). See Case Note, 112 U.Pa.

2. While it is possible in theory to project a few nonjurisdictional *motives* which may rescue an assignment for collection to a nonresident from the teeth of section 1359, as a practical matter, the litigational tactics involved would almost always be obvious. The assignor may always litigate in his own name. The assignee for collection may be essential to a federal lawsuit but he is not essential to a lawsuit per se. By comparison, the existence of other motivations is more than theoretical possibility in the case of a guardian or administrator. Such a fiduciary is necessary to litigation when the beneficiaries they represent cannot sue in their own behalf.

Where suit in any forum is impossible without some representative plaintiff, the *act of selection* itself is not suspect where diversity results even though the *person selected* may generate suspicion in light of the circumstances. Because litigation in some forum is open to the assignor the very act of assignment may be evidence of collusion when collection is the end, and diversity results. However, it must be noted that a guardian is not always essential to the institution of suit by the ward. As with the instant case, a *minor* may often sue in his own name through a next of friend.

L.Rev. 927 (1964). The Court of Appeals opinion in *Kramer* expressly refutes the holding in *Pappas*, 392 F.2d at 394. In affirming, the Supreme Court restates and clarifies the distinction between those assignments which are "real," making motive irrelevant, from those which are "colorable," making motive determinative.[3] Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 827–829, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).

█ *O'Brien* finds the implications of *Kramer* extending far beyond its narrow holding. Judge Kaufman makes the observation that *Kramer* "impliedly" overruled the grounds on which the prior law in the Second Circuit had rested. Under *O'Brien*, the *Kramer* rule becomes applicable to fiduciary appointments which resemble assignments for collection. The conceptual parallels drawn by the *O'Brien* Court would suggest a test analogous to the one in *Kramer* for the appointment of an administrator whose sole function is to press a claim on behalf of the real interested parties.[4] First, is the basis of the appointment or the circumstances of the estate such that the appointment becomes a natural jurisdictional device? Here the test is objective, much like the colorability test in assignment cases. With some appointments, the inquiry could stop here. Those fiduciaries appointed by will, for example, should be given jurisdictional recognition without inquiry into motive. Likewise, executors, administrators and trustees of large estates where the lawsuit is a minor asset should be secure. On the other hand, those appointments which lend themselves as ready jurisdictional devices, (*i. e.* those in which the fiduciary is selected after the cause of action arises, where the only major asset of the estate is the expectation of a civil judgment,) would face a second inquiry into actual motive. The burden would then be on the plaintiff to show an adequate independent justification for the appointment. If the appointment is a potential "device" and the evidence shows it was actually motivated by a desire to create federal jurisdiction, then it must be considered "collusive" under section 1359.

The dual test for collusive appointments was incorporated in the prior holdings of the Third Circuit in McSparren v. Weist, 402 F.2d 867, 874 (3d Cir. 1968) and of the Fourth Circuit in Lester v. McFaddon, 415 F.2d 1101, 1106 (4th Cir. 1969).

*McSparren*, like the present case, involved the appointment of a guardian for a minor child. The only funds that the guardian was responsible for, however, were monies which might have been obtained through a lawsuit, 402 F. 2d at 868.

---

3. It should be noted that one writer, commenting on the Court of Appeals opinion in *Kramer*, felt that this court did not consider motive material. Under this analysis the distinction is simply between assignments which are colorable and those which are real, with actual motive irrelevant in either case. Case Note, 46 Tex. L.Rev. 979, 982 and n. 27 (1968). A recent district court case approached the distinction in a slightly different fashion. Treating the *reality* or *colorability* of the assignment as the sole test, the court inquired into motivation only as an indispensable factor bearing on this single determination. Henley & Co. v. Miller Golf Equipment Corp., 300 F.Supp. 872, 876 (D.P.R.1969). The court did not suggest that an assignment may be found collusive without a finding of actual motive. It did suggest, however, that motive is not a separate issue, but rather a requisite part of any determination as to the *reality* of the transfer. The distinction between the *Henley* approach and the one outlined in the instant case is mainly academic, however, because a finding of actual motive is necessary in either situation.

4. In *Kramer*, the Court suggested three possible distinctions between the collusive assignment and appointment of a nonresident administrator or guardian in cases where suit must be brought by such a fiduciary. Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 828, 89 S.Ct. 1487, 23 L.Ed. 299 n. 9 (1968). The Second Circuit in *O'Brien* questioned and categorically rejected the application of all three distinctions to the facts before it. O'Brien v. AVCO Corp., 425 F.2d 1030 at 1035, 1036 (2d Cir. Nov. 13, 1969).

■ Although *McSparren* was decided before *Kramer,* the Third Circuit found no compelling distinctions between the assignment for collection and the appointment of a guardian whose duties could not extend beyond the institution of a lawsuit. *McSparren,* however, clearly extends the analogy only to those appointments where the sole motivation is the creation of jurisdiction. In Judge Freedman's words:

> The appointment of a fictitious guardian or representative selected by counsel *for no other purpose than to create diversity jurisdiction* in the action which will constitute the only asset in the estate is not substantially different from an assignment to an agent for the purpose of instituting litigation. (Emphasis added.)

402 F.2d at 874. *McSparren* correctly suggests that although the appointment of a nonresident fiduciary may create an initial presumption of collusiveness, the test is essentially a factual inquiry into motive. See Case Note, 15 Wayne L. Rev. 1632, 1641 (1969) and Case Note, 47 Tex. L. Rev. 1233, 1237 (1969). Under section 1359, jurisdiction is not collusive if the plaintiff can establish a substantial motive other than the creation of diversity. The plaintiff should be given the opportunity to show a substantial independent justification regardless of the type of appointment or the character of the estate.

## II.

If actual motive is the final indicator, a second related question arises whenever the facts disclose more than one motive behind a particular appointment, as they do here. The second question then is whether *O'Brien* intended to reach an appointment where one, but not the sole, purpose appears to be the creation of jurisdiction.

In *McSparren,* the Third Circuit restricted its holding to those cases where the jurisdictional motive was naked and exclusive.

The impropriety or collusion is not any conduct between the plaintiff and the defendant, for as Chief Judge Biggs pointed out in *Corabi,* the defendant may even oppose the guardian's prosecution of the action. The collusion exists betwen (sic) the nonresident guardian and the applicant for his appointment in the state proceeding as a result of which one *who would not otherwise have been named as guardian* has achieved the status from which he claims the right to sue because of his artificial selection *solely for the purpose of creating jurisdiction.* He is not chosen because of his capacity to manage the property of his ward, and indeed need have no experience in the management of property. (Emphasis added.)

402 F.2d at 873.

Before *McSparren,* in a case similar to the present one, the Third Circuit upheld the jurisdictional effectiveness of a guardianship appointment where the guardian was the daughter of the ward. Fallat v. Gouran, 220 F.2d 325 (3d Cir. 1955). *McSparren* disapproved of *Fallat* but only to the extent that manufactured diversity was approved in that case, 402 F.2d at 876. It is reasonable to assume that the result in *Fallat* would not be different after *McSparren* because there was sufficient indication in *Fallat* of motivations other than the naked creation of diversity.

■ When other substantial motives do appear, the appointment is not collusive. As one writer commenting on *McSparren* noted:

> When an out-of-state relative or a general guardian is appointed, or an out-of-state administrator, executor, or trustee with noted expertise is selected, it is not difficult to perceive a multiplicity of motives that will take the case out of the instant court's test.

Case Note, 15 Wayne L.Rev. 1632, 1641 (1969). The district courts which have discussed *McSparren* seem to suggest this interpretation. See Dougherty v. Oberg, 297 F.Supp. 635, 640 (D.Minn.

1969) (personal injury suit by nonresident guardian for benefit of six year old ward); Silvious v. Helmick, 291 F.Supp. 716, 720 n. 4 (N.D.W.Va.1968) (suit on wrongful death claim brought by nonresident administratrix, wife of deceased) and Duffy v. Currier, 291 F.Supp. 810, 813 (D.Minn.1968) (suit on wrongful death claim brought by nonresident trustee). However, a showing of relationship between guardian and ward *alone* is not enough to camouflage a naked arrangement to create diversity without some evidence of actual motives. See Richard v. Dervarics, 302 F. Supp. 709 (M.D. Pa.1969).

There is some language in *O'Brien* which suggests a broader rule than the one announced in *McSparren.* The issue is phrased initially as

* * * whether appointment of an administrator c.t.a. of an estate for *the* purpose of invoking federal diversity jurisdiction is "improper" or "collusive" within the meaning of 28 U.S.C.A. § 1359 (1964). (Footnote omitted.) (Emphasis added.)

O'Brien v. AVCO Corp., 425 F.2d 1030 at 1031 (2d Cir. Nov. 13, 1969). In summarizing their opinion, the Court says:

We * * * hold that appointment of an administrator for *the* purpose of obtaining federal jurisdiction violates section 1359. (Emphasis added.)

*Id.* at 1036. The word "solely" used constantly to restrict the holding in *McSparren* is omitted in both sentences.

Despite this failure to use more limited language, I am convinced that the Second Circuit did not intend an extension of section 1359 beyond the holding in *McSparren.* The Court in *O'Brien* refers specifically to two proposals of the American Law Institute for overhauling the federal jurisdictional statutes. One such proposal is section 1307 which would divest the district court of diversity jurisdiction whenever *an object* of the transfer was the creation of jurisdiction. Another proposal in section 1301(b)(4) would make the citizenship of a guardian or administrator irrelevant for purposes of diversity in certain circumstances.[5]

While suggestions that both proposals *should* be standards for interpreting present section 1359 run throughout the opinion, it appears that the substance of the holding incorporates neither, but relies instead on the reasoning of *McSparren* and *Kramer.* As Judge Kaufman states:

* * * [W]e do not deem it wise to create by judicial legislation the equivalent of the American Law Institute proposals, * * *.

O'Brien v. AVCO Corp., 425 F.2d 1030 at 1035 (2d Cir. Nov. 13, 1969). The *O'Brien* court does, however, demonstrate a more pronounced concern with the devices used to manufacture jurisdiction than can be detected in *McSparren.*

■ While it appears that only those appointments made *solely* to create jurisdiction are ineffective under *O'Brien,* a practical interpretation of the word *solely* must be adopted. Included within the prohibition of section 1359 are those cases in which various minor reasons born primarily in the light of hindsight are advanced before the court to camouflage an appointment where the only substantial purpose was the creation of jurisdiction. See Gilchrist v. Strong, 299 F.Supp. 804, 807 (W.D.Okl.1969). Yet, when other *substantial* purposes for an appointment do appear, section 1359 should not be invoked because jurisdic-

5. American Law Institute, Study of Division of Jurisdiction Between State and Federal Courts, 10–11 and 22–23 (Official Draft 1969). Legislative enactment of these proposals would eliminate many of the problems and inefficiencies connected with factual determinations under section 1359. For good discussions of all the A.L.I. proposals including those touching on manufactured diversity see Wright, Restructuring Federal Jurisdiction: The American Law Institute Proposals, 26 Wash. & Lee L.Rev. 185, 196 (1969); and Field, Jurisdiction of the Federal Courts—A Summary of American Law Institute Proposals, 46 F.R.D. 141, 143 & 146 (1969).

tion was incidentally created or because its availability was one of many things considered in the choice of a fiduciary.

■ Because I find that the creation of jurisdiction was not the sole or even dominant purpose behind the appointment of Mr. Farrell, the defendant's motion to dismiss is denied.