Karen FAHRNER, a minor, by her parents and natural guardians, J. Edward Fahrner and Agnes H. Fahrner, et al.,

v.

Nancy E. GENTZSCH et al.

Edward V. PINEDA et al.

v.

Nancy E. GENTZSCH and Joan Gentzsch

v.

Monica PINEDA, Third-Party Defendant.

Civ. A. Nos. 69–814, 70–819.

United States District Court, E. D. Pennsylvania.

Dec. 5, 1972.

Robert H. Finkel, Philadelphia, Pa., for Karen Fahrner.

Morris R. Brooke, Philadelphia, Pa., for Edward V. Pineda, and Monica Pineda.

John R. Warner, 3rd, Philadelphia, Pa., for Nancy E. and Joan Gentzsch.

Peter P. Liebert, for 3rd party defendant Monica Pineda.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendants, Nancy and Joan Gentzsch, have moved to dismiss the action in C.A. 70–819 for lack of complete diversity. The plaintiffs are Edward V. Pineda and Monica Pineda, husband and wife, their daughter, Maria Carolina, and their son, Gregory.[1] Both Maria Carolina and Gregory are minors and their claims for relief are brought by their parents. The case involves an intersectional collision between a vehicle driven by Mrs. Pineda, in which Maria Carolina and Gregory were passengers, and a vehicle driven by Nancy Gentzsch and owned by Joan Gentzsch, in which Karen Fahrner, plaintiff in C.A. 69–814, was a passenger.

Defendants are citizens of the Commonwealth of Pennsylvania. The complaint alleges that Edward V. Pineda, Monica Pineda and Maria Carolina are citizens of Chile, residing in Pennsylvania, and that Gregory is a citizen of the United States, residing in Pennsylvania. Defendants have moved to dismiss for lack of subject matter jurisdiction since it appears on the face of the complaint that complete diversity is lacking in that Gregory is a citizen of the same state as the defendants.[2]

We begin by considering whether the citizenship of the minor, Gregory, or that of the parents as next friend is determinative on the issue of diversity of citizenship of the parties.[3] If the citizenship of the parents as next friend controls, diversity exists under the alienage provision of 28 U.S.C. § 1332(a)(2) (1970). In Fallat v. Gouran, 220 F.2d 325 (3rd Cir. 1955) a general guardian[4]

---

1. Monica Pineda was severed and joined as a third-party defendant in a complaint brought by the defendants, Nancy and Joan Gentzsch. For the purpose of the motion to dismiss, however, we will treat Monica Pineda's interests as common with those of the plaintiffs, Edward, Maria Carolina and Gregory Pineda. This realignment reflects the real diversity between the parties. See City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713 (1905); Wright, Federal Courts, § 30 (2d Ed. 1970).

2. A deposition of Mr. and Mrs. Pineda also indicates that Gregory is a citizen of the United States and a resident of the Commonwealth of Pennsylvania since his birth in 1966.

3. The caption of the complaint states that suit is brought by "Gregory Pineda, a minor, by his parents and natural guardians, Edward V. Pineda and Monica Pineda." Rule 2027 of the Pa.R.Civ.P., 12 P.S. Appendix provides: "When a minor is party to an action he shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor." And Rule 2026 defines a guardian as "the party representing the interest of a minor party in any action whether he is (a) the guardian of a minor appointed by any

court of competent jurisdiction, (b) a person in the nature of a next friend selected to represent a minor plaintiff in an action, or (c) a guardian ad litem specially appointed by the court in which the action is pending." Thus, we regard the parent's capacity in this action as that of a next friend under Rule 2026(b) since the parents have not been appointed to act either as a general guardian or as a guardian ad litem under Rule 2026(a) or (c). In fact, the parents of a minor are disqualified from acting as a guardian of the estate of a minor when there has been no co-guardian appointed. Pennsylvania Fiduciaries Act of 1949, § 1012 as amended 20 P.S. § 320.1012. Section 1012 as amended is identical to § 5112 of the newly enacted Probate, Estates and Fiduciaries Code effective July 1, 1972. Furthermore, the status of natural guardian confers "no authority whatever to exercise any control over the estate of the minor." Daniels v. Metropolitan Life Ins. Co., 135 Pa.Super. 450, 5 A.2d 608 (1939).

4. A general guardian is a guardian of the estate of a minor as distinguished from a guardian ad litem who represents the minor's interests solely within the context of specific litigation. See Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3rd Cir. 1962).

appointed by the Court of Common Pleas of Montgomery County, Pennsylvania brought suit to recover for injuries to a person who because of an automobile accident had become mentally incompetent. The guardian was a citizen of New Jersey, while both the incompetent and the defendants were citizens of Pennsylvania. Diversity jurisdiction was found to exist between the general guardian and the defendants. The court felt that because the general guardian had capacity to sue her citizenship was determinative. *Accord,* Obney v. Schmalzreid, 273 F.Supp. 373 (E.D. Pa.1967); DiStefano v. Lehigh Valley Railroad Co., 258 F.Supp. 721 (E.D.Pa. 1966); Johnstone v. O'Connor & Co., 164 F.Supp. 66 (E.D.Pa.1958); Morris v. Bradley, 139 F.Supp. 519 (E.D.Pa. 1956). It did not matter who the real party in interest was under state law. The court stated:

> It is our conclusion that it is not the citizenship of the incompetent, whether or not he be the real party in interest, which governs but the citizenship of the guardian, provided he has capacity to sue.

Fallat v. Gouran, *supra,* 220 F.2d at 326.[5] With this view in mind the court set out two alternative guidelines, without stating which was correct, for determining whether the general guardian had capacity to sue. Capacity to sue in federal court was to be determined by either Rule 17 of the Fed.R.Civ.P., 28 U.S.C.[6] or by reference to state law. In DiStefano v. Lehigh Valley Railroad Co., *supra,* the reasoning in *Fallat* was extended to allow even a guardian *ad litem's* citizenship to control so long as the guardian *ad litem* had capacity to sue under state law.[7]

It is doubtful, however, that a next friend as such has capacity to sue under Pennsylvania law. Pennsylvania Fiduciaries Act of 1949, § 1041, 20 P.S. § 320.1041[8] provides that the "guardian of the estate of a minor appointed by a court . . . shall also have the right to maintain any action with respect to such real or personal property of the minor." A next friend[9] is in no sense a guardian of the estate of a minor, and is not a party in a suit by a minor. Bertinelli v. Galoni, 331 Pa. 73, 200 A. 58 (1938). And the designation of a next friend as a guardian in Rule 2026 of the Pa.R.Civ.P., 12 P.S. Appendix is merely for the purpose of consistency in terminology. P.L.E. Minors § 74. But *Bertinelli* did state that the purpose of a next friend is to "supply the want of capacity in the minor." In addition, it may be argued that Fed.R.Civ.P. 17(c) provides the next friend with capacity to sue. Fallat v. Gouran, *supra,* 220 F.2d at 328.

■ It is not necessary, however, in light of McSparran v. Weist, 402 F.2d

---

5. The *Fallat* analysis has been criticized by the commentators as not helpful in determining whose citizenship shall control for diversity jurisdiction, 3A Moore, Federal Practice ¶ 17.04, p. 119 (2d Ed. 1970) and as inconsistent with Supreme Court authority, Wright, Federal Courts § 29, p. 95.

6. Rule 17, the court felt, contained an ambiguity concerning whether under 17 (c) capacity to sue would exist irrespective of state law or that 17(c) was qualified by 17(b) and state law would at least have to be considered in determining capacity to sue.

7. The capacity of a guardian *ad litem* to sue was thought to exist under the Pennsylvania Fiduciaries Act of 1949, § 1041, 20 P.S. § 320.1041 which provided that the "guardian of the estate of a minor

. . . shall also have the right to maintain any action with respect to such real or personal property of the minor." Section 5141 of the newly enacted Probate, Estates and Fiduciaries Code effective July 1, 1972 is identical to the former § 1041.

8. The Fiduciaries Act of 1949, 20 P.S. § 320.101 has been replaced by the Probate, Estates and Fiduciaries Code effective July 1, 1972. We are concerned with the 1949 Act because it was in effect when the complaint was filed in this action.

9. Next friend has been defined as: "One acting for benefit of infant, married woman, or other person not sui juris, without being regularly appointed guardian." Black's Law Dictionary 1194 (4th Ed. 1968).

867 (3rd Cir. 1968), cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) to distinguish the capacity of a guardian *ad litem* or a next friend to sue, if indeed such a distinction were at all tenable. *See* 3A Moore, Federal Practice, ¶17.26, p. 908 (2d Ed.1970). *Compare* Berkowitz v. Philadelphia Chewing Gum Corp., 303 F.2d 585 (3rd Cir. 1962) (distinction between a general guardian and a guardian *ad litem* recognized). McSparran v. Weist, *supra*, overruled *Fallat* to the extent that *Fallat* indicated approval of "manufactured" diversity. There is much in *McSparran*, however, to indicate that, regardless of the capacity of a guardian to sue under state law, if a representative is a nominal party the minor's citizenship shall control in determining diversity. *McSparran* made it clear that a representative, including the guardian of a minor, will be considered a nominal party when the sole grounds for appointment of the representative was for the purpose of creating or manufacturing diversity jurisdiction in violation of 28 U.S.C. § 1359 (1970).[10] It was the nominal status of the guardian at which the court struck. Thus, in refusing to find significant, on the issue of diversity of citizenship, the guardian's appointment by a state court, the court stated:

> We do not impugn this decree [the state court appointment of the guardian] collaterally by refusing to recognize the citizenship of a straw guardian. Guardian he remains, but since he is acting in the capacity of a straw party we refuse to recognize his citizenship for purposes of determining diversity jurisdiction. His appointment may have authorized him to bring suit but his nominal status does not make his citizenship determinative for purposes of diversity. He occupies in effect the role of a guardian *ad litem* or a next friend or prochein ami whose function merely is to supply a party on the record responsible for costs. (Bertinelli v. Galoni, 331 Pa. 73, 75, 200 A. 58, 59, 118 A.L.R. 398 (1938), and whose citizenship would not be determinative of diversity jurisdiction.

McSparran v. Weist, *supra*, 402 F.2d at 874 [footnote omitted]. And, in rebutting those cases which established the proposition that courts will not inquire into the motives that led to the appointment of a personal representative, the court felt that motive was a relevant factor in determining the question before it, i. e., "whether the fiduciary is in fact a straw fiduciary whose citizenship is to be disregarded." *Id.* [footnote omitted.] Furthermore, in referring to the relevance of Rule 17 of the Fed.R.Civ.P. in determining the issue of whose citizenship is to be looked to for deciding the question of diversity of citizenship, the court stated:

> The focus of the rule is on capacity to sue, and it does not purport to establish standards for the determination of diversity of citizenship. Indeed, as Rule 82 expressly states, the rules do not affect the jurisdiction of district courts. Even though Rule 17(c) authorizes an infant or incompetent to sue or be sued by his next friend or by a guardian ad litem, it has been held that the citizenship of one acting in such a limited representative capacity, although with capacity to sue, is not determinative of diversity of citizenship.

*Id.* at 870 [footnote omitted]. Thus, while no contention can be made that diversity is manufactured in this case, it is clear that the citizenship of the parents as next friend is not determinative whether state law or Rule 17(c) grants a next friend capacity to sue. *See also* Lester v. McFaddon, 415 F.2d 1101 (4th Cir. 1969); Ziady v. Curley, 396 F.2d 873 (4th Cir. 1968); Appelt v. Whitty, 286 F.2d 135 (7th Cir. 1961); Curry v.

10. 28 U.S.C. § 1359 (1970) states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

Maxson, 318 F.Supp. 842 (W.D.Mo. 1970).

■ Having determined that the minor's citizenship is controlling in deciding diversity of citizenship when a minor is represented by a next friend, we must now consider of what state Gregory is a citizen. This inquiry is mandated since United States citizenship is not by itself sufficient to sue or be sued in federal court under 28 U.S.C. § 1332(a)(1) (1970); a person must also be a citizen of a particular state of the United States. *See generally* 1 Moore, Federal Practice ¶ 0.74 [1] pp. 707–707.1 and ¶ 0.74 [3.—1] p. 707.50 (2 ed. 1972). Furthermore, Gregory cannot rely on the alienage provision of 28 U.S.C. § 1332 (1970) since he is a citizen of the United States. Van der Schelling v. U. S. News & World Report, Inc., 213 F.Supp. 756, 762 (E.D.Pa.) aff'd per curiam 324 F.2d 956 (3rd Cir. 1963), cert. denied 377 U.S. 906, 84 S.Ct. 1166, 12 L.Ed.2d 177 (1964); Pemberton v. Colonna, 189 F.Supp. 430, 432 (E.D.Pa.1960) aff'd per curiam, 290 F. 2d 220 (3rd Cir. 1961).

■ Citizenship is generally regarded as synonymous with domicile. *See* 1 Moore, Federal Practice ¶ 0.74 [3.—1] p. 707.50 (2d Ed.1972). The domicile of a minor is generally considered to be that of the father. Kaiser v. Lommis, 391 F.2d 1007, 1009 (6th Cir. 1968). *See also* 1 Moore, Federal Practice ¶ 0.74 [6.—2] p. 708.55 (2d Ed. 1972). As previously noted, Gregory's father was a citizen of Chile at the time this action was commenced.[11] Since Mr. Pineda was not a United States citizen at the time suit was filed, he could not have had domicile for diversity purposes in any particular state of the United States. City of Minneapolis v. Reum, 56 F. 576 (8th Cir. 1893); Frick v. Lewis, 195 F. 693 (6th Cir. 1912). *See also* Wright, Federal Courts § 24 pp. 80–81

(2d Ed.1970). Thus Gregory was not a citizen of any particular state at the time suit was filed. Hernandez v. Lucas, 254 F.Supp. 901 (S.D.Tex.1966); 1 Moore, Federal Practice ¶ 0.74 [4] p. 708.3 and ¶0.75 [1.—1] p. 709.4 (2d Ed.1972). *But see* Aguirre v. Nagel, 270 F.Supp. 535 (E.D.Mich.1967). And because Gregory is a proper party to this suit, Dollar S. S. Lines v. Merz, 68 F.2d 594 (9th Cir. 1934), his lack of citizenship in any particular state at the time the complaint was filed destroys the complete diversity required by Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

We do not, however, find it necessary to grant defendant's motion to dismiss for lack of diversity. In Wilson v. American Chain and Cable Company, 364 F.2d 558 (3rd Cir. 1966) the court allowed a claim by a father, whose son had been injured by a lawn mower manufactured by defendant, that did not meet the jurisdictional amount requirement of 28 U.S.C. § 1332 (1970) to be adjudicated in the suit brought by the son whose claim met the requirements of § 1332. Newman v. Freeman, 262 F. Supp. 106 (E.D.Pa.1966) applied the reasoning in *Wilson* to allow a non-diverse father's claim to be adjudicated along with the son's claim for damages. It was felt that "so long as one claim is substantial and is properly before [the court] and the other derives from the same operative facts . . . and logically would be tried in the same proceeding, [the court would] have power to adjudicate the entire controversy." Id. at 108–9. The use of what has been termed by these cases pendent jurisdiction in diversity actions has been accepted by other federal courts including the Third Circuit. *See* Almenares v. Wyman, 453 F.2d 1075, 1084 (2nd Cir. 1971); Nelson v. Keefer, 451 F.2d 289 (3rd Cir. 1971); Schwab v. Erie Lackawanna

11. This is the case since Mr. Pineda had not renounced his Chilean citizenship at the time this action was commenced. 1 Moore, Federal Practice, ¶ 0.75 [1.—4] p. 709.15 (2d Ed. 1972). That Mr. Pineda has now become a United States citizen does not effect the determination that at the time the suit was filed he was a citizen of Chile. Psinakis v. Psinakis, 221 F.2d 418 (3rd Cir. 1955).

Railroad Co., 438 F.2d 62, 70 n. 18 (3rd Cir. 1971); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 817 (8th Cir. 1969); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3rd Cir. 1968); Campbell v. Triangle Corp., 336 F.Supp. 1002 (E.D.Pa.1972). *See also Note,* UMW v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657, 662–63 (1968).

It is clear that under the test for pendent jurisdiction laid down in UMW v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) we have jurisdiction to adjudicate Gregory's claim along with that of his parents and sister. Gregory's claim arises out of the "common nucleus of operative facts" that supports the claims made by his parents and sister. As stated in *Jacobson:*

> [T]his court has taken the lead in recognizing diversity jurisdiction over an entire lawsuit in tort cases presenting closely related claims based, in principal part at least, on the same operative facts and normally litigated together, even though one of the claims, if litigated alone, would not satisfy a requirement of diversity jurisdiction.

Jacobson v. Atlantic City Hospital, *supra,* 392 F.2d at 153. And the considerations of judicial economy, convenience and fairness to the litigants articulated in *Gibbs* as the guidelines for the proper exercise of pendent jurisdiction are no different when the jurisdictional defect alleged is lack of complete diversity. *See* Campbell v. Triangle Corp., *supra,* 336 F.Supp. at 1006. As a further consideration we note that Rule 2228(b) of the Pa.R.Civ.P., 12 P.S. Appendix requires that the claims of the parents and minors be enforced in one action.

The continued reaffirmation by the Third Circuit of the use of pendent jurisdiction in diversity cases argues persuasively in favor of our conclusion that Gregory's claim is part of the same case for which jurisdiction clearly exists between his parents and sister and the defendants. Thus, we deny defendant's motion to dismiss for lack of complete diversity.[12]

---

12. It should be noted that a plaintiff may amend his pleadings to cure any jurisdictional defect even at the appellate level if he so desires. 28 U.S.C. § 1653 (1970).